**Jacqueline McCOO, et al., Plaintiffs,**

v.

**DENNY'S INC., et al., Defendants.**

**Civil Action No. 98–2458–RDR.**

United States District Court,
D. Kansas.

April 18, 2000.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiffs.

Karen J. Halbrook, John R. Cleary, Karen M. Gleason, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for Denny's Inc., defendants.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (doc. 74). Plaintiffs seek to compel Defendant Denny's, Inc. ("Denny's") to answer Plaintiffs' First Requests for Production of Documents, Second Requests for Production of Documents, and First Interrogatories. With the exception of Plaintiffs' Interrogatories No. 1 and 4, Denny's has asserted objections to each and every one of the requests for production and interrogatories.

The Parties focus their arguments on Denny's objections of (1) work product protection; (2) attorney-client privilege; (3) confidentiality pursuant to the non-disclosure provision of the Kansas Act Against Discrimination ("KAAD"), K.S.A. 44–1005(e); and (4) confidentiality pursuant to the non-disclosure provision of a consent decree to which Denny's is a party. Plaintiffs also generally assert that the remainder of Denny's objections are insufficient. While none of the Parties has fully briefed those remaining objections, Denny's has nonetheless indicated that it is still relying on those objections of irrelevance, overly broad, unduly burdensome and vagueness. Rather than discussing the basis for those objections in its brief, Denny's merely refers the Court to the objections it set forth in its responses to the requests for production and interrogatories. Thus, the Court will also consider the validity of the other objections asserted by Denny's.

In addition to seeking to compel Denny's to respond to these requests for production and interrogatories, Plaintiffs request that Denny's be ordered to pay the attorney fees and expenses Plaintiffs have incurred in bringing their Motion to Compel.

## I. BACKGROUND INFORMATION

This is an action brought pursuant to 42 U.S.C. § 1981 by two African–American individuals against Denny's and Jerry Monosmith, a security officer working for Denny's. Plaintiffs claim they were denied their equal rights under the law to make and enforce a contract for services with Denny's. Plaintiffs were customers in a Denny's restaurant in Topeka, Kansas on February 21, 1997, when Plaintiffs claim they were subjected to racially derogatory comments. Plaintiffs also allege that, because of their race, they were refused service and directed to leave the premises without receiving their meals. Plaintiffs also assert a claim against Mr. Monosmith in his individual capacity under 42 U.S.C. § 1983 for deprivation of their equal protection rights.

Plaintiff Jacqueline McCoo filed a complaint of race discrimination with the Kansas Human Rights Commission ("KHRC") on

April 24, 1997. Plaintiff Nathalie Kerr filed her complaint with the KHRC on July 15, 1997.

## II. PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

### A. First Request for Production No. 1

Request for Production No. 1 requests all "[d]ocuments, correspondence or other materials received from or provided to the Kansas Human Rights Commission in response to Plaintiffs' complaints." Denny's objects on the basis of attorney-client privilege and work product immunity. Denny's also objects on the basis that these documents "were made as part of the Kansas Human Rights Commission investigative process," and cites K.S.A. 44–1005(e) and *Atchison, Topeka & Santa Fe Ry. Co. v. Lopez*, 216 Kan. 108, 531 P.2d 455 (1975). Denny's further asserts that the request is objectionable because it seeks information that Denny's has been ordered not to disclose under a consent decree entered by the United States District Court for the District of Maryland in *Dyson v. Flagstar, et al.*, No. DKC–93–1053 ("Consent Decree"), and a Stipulation and Order regarding Clarification of Confidentiality Provisions of Consent Decree ("Stipulation"), which amends the Consent Decree.

#### 1. Attorney-client privilege and work product immunity

■ Denny's, as the party asserting the attorney-client privilege and work product immunity, has the burden of establishing that the privilege/immunity applies. *Boyer v. Board of County Comm'rs*, 162 F.R.D. 687, 688 (D.Kan.1995). To carry that burden, Denny's must make a "clear showing" that the asserted objection applies. *Ali v. Douglas Cable Communications, Ltd. Partnership*, 890 F.Supp. 993, 994 (D.Kan.1995). Denny's must also "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery. *National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D.Kan.1994). Federal Rule of Civil Procedure 26(b)(5) provides that when a party withholds documents or other information based on a privilege or work product immu-

nity, the "party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

■ As the party asserting the privilege/work product objection, Denny's must also provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied. *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D.Kan. 1995). A "blanket claim" as to the applicability of the privilege/work product doctrine does not satisfy the burden of proof. *Marten v. Yellow Freight Sys. Inc.*, No. 96–2013–GTV, 1998 WL 13244, at *4 (D.Kan. Jan.6, 1998); *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D.Kan.1994). A party's failure to meet this burden when the trial court is asked to rule upon the existence of the privilege/work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984).

■ Denny's has failed to meet its burden to show that these documents are privileged attorney-client communications. The "Privilege Log" that Denny's provides in response to Request for Production No. 1 indicates that the claimed privileged documents are letters from Denny's counsel to the Executive Director of the KHRC and not correspondence between Denny's legal counsel and any employee, officer, director, or other representative of Denny's. Thus, there simply is no basis for Denny's to contend that any letters it *provided to* the KHRC are attorney-client communications. Even if these letters did contain attorney-client communications, any privilege would have been waived when they were disclosed to the KHRC. *See Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 140 (D.Kan.1996) (under privilege law of Kansas, "[i]ntentional disclosure to third parties of privileged information is a waiver of any privilege."). To the extent that Denny's is also asserting that certain

documents it *received from* the KHRC are attorney-client communications, the Court also finds no valid privilege. Denny's does not identify any such documents in its Privilege Log, and the Court cannot fathom how any documents that the KHRC provided Denny's could be deemed attorney-client privileged. The Court therefore overrules this objection.

■ The Court likewise finds no basis for ruling that any documents received from or provided to the KHRC are work product. With respect to the three letters that Denny's provided to the KHRC, the Court has already ruled that any work product protection they may have enjoyed was waived when they were provided to the KHRC. *See* March 21, 2000 Memorandum and Order (doc.118). The Court therefore also overrules this objection.

### 2. Confidentiality pursuant to K.S.A. 44–1005(e)

Denny's also contends that the requested KHRC documents are not discoverable pursuant to the non-disclosure provision of the KAAD, K.S.A. 44–1005(e). The Court previously rejected this argument in its March 21, 2000 Memorandum and Order. This objection is therefore overruled.

### 3. Confidentiality pursuant to the Consent Decree and Stipulation

■ Denny's also objects to producing the requested documents on the basis they are protected under the confidentiality provisions of a consent decree entered by the United States District Court for the District of Maryland in *Dyson v. Flagstar, et al.,* No. DKC–93–1053 ("Consent Decree"), and a Stipulation and Order Re: Clarification of Confidentiality Provisions of Consent Decree ("Stipulation"), which amends the Consent Decree. The Consent Decree was entered into by Denny's and other related entities in May 1994 to settle a class action race discrimination lawsuit brought by customers of

Denny's under 42 U.S.C. §§ 1981 and 2000a. The Consent Decree became effective May 24, 1994 and is to remain in effect for seven years from that date. Consent Decree, Sec. IV.C at pp. 8–9.

The stated purpose of the Consent Decree is to ensure that "all future customers of company-owned and franchise-owned Denny's Restaurants are accorded equal treatment and service regardless of race and/or color." *Id.,* Sec. II.A at p. 5. In order for the Decree to be appropriately monitored, Denny's and the Monitor[1] are required to maintain appropriate records. *Id.,* Sec. X at p. 16. The Consent Decree sets forth specific recordkeeping duties of the Monitor. The Monitor must "maintain" records of the following: (a) all race discrimination complaints made by any customer; (b) all training materials, including guidelines, policy statements and videos; (c) all advertisements and promotional materials; (d) all records relating to "tests" conducted pursuant to the Consent Decree, and (e) all records "relating to the implementation of any provision of the Consent Decree." *Id.,* Sec. XIV.B.3 at pp. 54–55. In turn, Denny's has a duty to retain all documents that it "creates, generate, or receives from the Monitor that pertain to the Decree." *Id.,* Sec. XIV.B.4 at p. 55. Denny's also has the duty to "maintain all documents and records provided by the Monitor as well as all documents and records maintained and/or generated by Denny's that pertain to the Decree." *Id.*

Section XIV.B of the Consent Decree contains certain confidentiality provisions. Subsection 1 was amended by the Stipulation, to provide in pertinent part:

*Information of any kind, written or oral, that is generated, maintained, produced or preserved pursuant to the terms of the Decree* (hereafter "Confidential Information") *shall be kept confidential* and used and/or disclosed solely for the purposes of this decree in accordance with the intentions of the parties to the Decree. Confidential Information shall be kept confi-

---

1. The Monitor is an individual selected by the parties to the Consent Decree. The Monitor's duties include assisting the District Court in Maryland and class counsel in monitoring the defen-

dants' compliance with the Decree and ensuring that the Decree is implemented effectively. Consent Decree, Sec. XIV.A.1 at pp. 42–25.

dential and shall only be used by and/or disclosed to the Monitor, Denny's, Class Counsel, and their respective employees or agents who have a need to know or use such information, solely for purposes of enforcing, monitoring or administering this Decree. Only the Court, the parties, and the Monitor have the right under the Decree to enforce, monitor, or administer the Decree. *The Monitor, Denny's and Class Counsel and their respective employees or agents shall not disclose Confidential Information to any person who is not a party to this Decree, including without limitation any person who seeks such Confidential Information in other litigation through discovery process in other courts, unless they are otherwise ordered to do so by this Court or unless all of the parties agree in writing that such disclosure will promote the enforcement, monitoring, or administration of the Decree.* If a person not a party to this Decree seeks disclosure of Confidential Information from this Court, it is the intent of the parties that such information shall not be disclosed unless the person establishes that this confidentiality provision has been expressly waived in writing by all of the parties with respect to the particular information sought.

Stipulation, Sec. B at pp. 4–6 (emphasis added).

This Court has previously noted its concerns about the extent that Denny's may use the Consent Decree to diminish the rights of individuals and entities who were not parties to the Consent Decree, including Plaintiffs in this case. *See* February 11, 2000 Memorandum and Order, doc. 104. In its February 11, 2000 Memorandum and Order, the Court ruled that it would apply the holding of *United States v. Bleznak*, 153 F.3d 16 (2d Cir. 1998) to the confidentiality provisions of the Consent Decree and Stipulation ("Confidentiality Provisions") in this case. As the Court noted, under the *Bleznak* rule, only those documents subject to the Confidentiality Provisions *that would not have come into existence but for the existence of the Consent Decree* will be shielded from discovery.

The Court directed the Parties to submit supplemental briefs addressing this issue, and the Court is now prepared to rule as to which documents sought by Plaintiffs are protected by the Confidentiality Provisions.

■ Denny's contends that the letters from its in-house counsel and legal assistant to the KHRC are protected by the Confidentiality Provisions because they "relate to the investigation allowed by the Consent Decree's Civil Rights Monitor." Denny's Supp. Mem. (doc. 111) at 8. Under the Consent Decree, Denny's must notify the Monitor if it wishes to conduct an investigation of a complaint of discrimination. Consent Decree, Sec. XIV at p. 51. Here, the Monitor granted Denny's permission to investigate, and the letters to the KHRC apparently are based on, or refer to, the factual information obtained through that investigation. Denny's argues that the letters would not have been prepared or provided to the KHRC but for the existence of the Consent Decree.

The Court is not persuaded by Denny's argument. The investigation conducted by Denny's was merely *allowed,* but *not required,* by the Consent Decree. *See* Consent Decree, Sec. XIIV at pp. 50–51 (all discrimination complaints must be forwarded to the Monitor for investigation, but "nothing contained in this Decree shall prohibit Denny's from conducting its own investigation ... provided such investigation does not interfere with the Monitor's investigation.") Furthermore, it is reasonable to assume that the investigation probably would have occurred even in the absence of the Consent Decree.

In light of the above, the Court concludes that the documents do not meet the *Bleznak* standard. In other words, the requested documents cannot reasonably be deemed material that "would not have come into existence but for the existence of the Consent Decree." The requested KHRC documents are therefore not protected by the Confidentiality Provisions of the Consent Decree and Stipulation.

In light of the above, the Court overrules all of Denny's objections to Plaintiffs' First Request for Production No. 1, and Denny's shall produce the requested documents.

## B. First Request for Production No. 2

This request seeks all "[w]ritten or otherwise recorded statements of Plaintiffs or any person known to be a witness to any fact relevant to Plaintiffs' complaints." Denny's objects to producing handwritten statements of five witnesses[2] on the basis of the Confidentiality Provisions of the Consent Decree and Stipulation, attorney-client privilege, and work product immunity. Denny's states that the handwritten statements were obtained by a Denny's corporate representative in the course of the internal investigation discussed above. According to Denny's, that investigation was undertaken pursuant to the direction of Denny's in-house counsel and in anticipation of litigation. The statements were provided in February, March, and early April 1997. Plaintiff McCoo filed her KHRC charge in late April, while Plaintiff Kerr filed her charge in July 1997.

### 1. Confidentiality pursuant to the Consent Decree and Stipulation

The Court is not persuaded by Denny's arguments that the witness statements are shielded from discovery under the Confidentiality Provisions of the Consent Decree and Stipulation. As noted above, the investigation was merely allowed and not required by the Consent Decree and it is was an investigation that probably would have taken place even in the absence of the Consent Decree. This objection is therefore overruled.

### 2. Work product immunity

■ The Court is also not persuaded by Denny's argument that the statements are protected by work product immunity. Although Denny's has satisfied the first two elements of the work product doctrine, *i.e.,* that the statements are documents and that they were prepared by a party, it has not satisfied the third element that they were "prepared in anticipation of litigation." *See Bohannon v. Honda Motor Co. Ltd.,* 127 F.R.D. 536, 538–39 (D.Kan.1989) (setting forth the elements of work product immunity); Fed.R.Civ.P. 26(b)(3).

"It is well settled that the party seeking to invoke work product immunity ... has the burden to establish *all elements* of the immunity ... and that this burden 'can be met only by an evidentiary showing based on competent evidence.' " *Johnson v. Gmeinder,* Nos. 98–2556–GTV, 98–2585–GTV, 2000 WL 133434, at *4 (D.Kan. Jan.20, 2000) (quoting *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. 94–2395–GTV, 1995 WL 625962, at *7 (D.Kan. Oct.5, 1995)) (emphasis added by *Johnson).* Accord *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D.Kan.1994). That burden "cannot be 'discharged by mere conclusory or ipse dixit assertions.' " *Johnson,* 2000 WL 133434, at *4 (quoting *Audiotext,* 1995 WL 625962, at *7 (quoting *Bourne `of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y. 1993))).

To justify work product protection, Denny's must show that the threat of litigation was "real and imminent." *See Audiotext,* 1995 WL 625962, at *9. "The inchoate possibility, or even the likely chance of litigation, does not give rise to the privilege." *Id.* Thus, to support its claim of work product, Denny's must provide more than mere assertions that these documents were created in anticipation of litigation. *See id.*

Denny's has provided no affidavit or other evidentiary support for its contention that the witness statements were obtained in anticipation of litigation. It establishes no facts that would have put Denny's on notice that litigation could be expected. Denny's merely alleges that a few hours after the incident, Plaintiff McCoo "returned to the restaurant with two male friends who entered the restaurant and threatened the manager." Response to Motion to Compel (doc. 76) at 2. Denny's then "submits that the documents created during the internal investigation were prepared in anticipation for litigation." *Id.* at 4. These conclusory allegations are not sufficient to meet Denny's burden.

---

2. The Court notes that Roger Zebill provided two handwritten statements. Plaintiffs state in their reply brief that Denny's has produced Mr. Ze-

bill's March 17, 1997 statement. The Court will therefore deny as moot Plaintiffs' motion to compel production of that particular statement.

Moreover, Denny's cannot rely on the doctrine that the filing of an administrative charge provides reasonable grounds for anticipating litigation sufficient to satisfy this third element. *See Equal Employment Opportunity Comm'n v. General Motors Corp.*, No. 87–2271–DES, 1988 WL 170448 at *2 (D.Kan. Aug. 23, 1988) (documents deemed prepared in anticipation of litigation when prepared after charges were filed with EEOC). Indeed, the witness statements here were obtained *before* either of the KHRC charges was filed.

Even if the Court were to find that Denny's has met its burden to show that the documents were prepared in anticipation of litigation and therefore work product, the Court would still find that three of the statements were discoverable under the "necessity" exception. *See Frontier Refining Inc. v. Gorman–Rupp Co., Inc.* 136 F.3d 695, 702–703 (10th Cir.1998). Under that exception, fact work product, such as the witness statements here,[3] is discoverable if:

(1) there is a substantial need of the material in the preparation of [the] case; and (2) that [the discovering party] is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

*Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 538–39 (D.Kan.1989) (citing Fed. R.Civ.P. 26(b)(3)). *Accord Frontier Refining*, 136 F.3d at 702–703.

■ The party attempting to pierce the work product protection by relying on the necessity exception bears the burden of proof and persuasion. *See Audiotext*, 1995 WL 625962, at *9; *Comeau v. Rupp*, 142 F.R.D. 683, 685 (D.Kan.1992). To justify disclosure, that party must show the importance of the information to the preparation of its case and the difficulty it will face in obtaining substantially equivalent information from other sources if production is denied. *Blair v. United States*, No. 87–4140–RDR, 1990 WL 171058, at *2 (D.Kan. Oct.3, 1990). The

Court has broad discretion to determine whether the requisite showing has been made. *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1019, 1021 (1st Cir.1988); *United States v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 400 (D.Colo. 1992); *Blair*, 1990 WL 171058 at *2.

Plaintiffs contend that they have a substantial need for the statements because they were provided by Denny's employees who witnessed the alleged discriminatory incident and will most likely contain a factual recitation of the events as witnessed by them. Plaintiffs assert that they are unable to obtain the factual material that is the subject of these witness statements by other means. Plaintiffs state, and Denny's does not dispute, that the Parties have tried to take the depositions of three of these witness (Deena Sharp, Delonah Fisher and Tanya Gamez) on several occasions, but the witnesses failed to appear despite their being served with subpoenas. Plaintiffs contend that the handwritten statements are "the only available version of the witnesses' account of the incident." Plaintiffs' Supp. Mem. (doc. 113) at 8.

■ The Court agrees, and finds that Plaintiffs have met their burden to establish this element[4]—at least with respect to the three witnesses identified above who have failed to appear for their subpoenaed depositions. Several cases have held that the unavailability of witnesses satisfies the element that the party is unable to obtain the substantial equivalent of the information. *See, e.g., Scurto v. Commonwealth Edison Co.*, No. 97 C 7508, 1999 WL 35311, at *2 (Jan. 11, 1999 N.D.Ill.) (party may obtain fact work product "only in 'rare situations' such as those involving witness unavailability"); *United States v. Davis*, 131 F.R.D. 391, 395–96 (S.D.N.Y.1990) (statement discoverable where witness was "effectively unavailable" because in Greece); *McNulty v. Bally's Park Place, Inc.*, 120 F.R.D. 27, 30 (E.D.Pa.1988) (statement from defendant's employee dis-

---

**3.** Denny's does not contend that the witness statements are attorney or opinion work product to which the necessity exception would not apply, and the Court finds that the statements constitute ordinary, fact work product.

**4.** In this case, Plaintiffs have gone beyond showing that they can obtain the substantial equivalent of this information only *with undue hardship*, and have shown that they most likely cannot obtain it at all.

coverable where plaintiff's efforts to reach him were "unavailing"); *Hanson v. Gartland S.S. Co.*, 34 F.R.D. 493, 495 (N.D.Ohio 1964) (statements of seamen who could not be found at address given by defendant subject to discovery); *Goldner v. Chicago & N.W.Ry. Sys.*, 13 F.R.D. 326, 329 (N.D.Ill.1952) (statements discoverable if witnesses cannot be found or refuse to give information). *See also* James W. Moore, Moore's Federal Practice, Discovery of Trial Preparation, ¶ 26.15[3] at 26–308 & –309 ("In general, discovery will not be permitted where the party seeking production of the statement has access to the witness and may thus obtain equivalent evidence. However, if the witness has become unavailable since making the earlier statement, production is often ordered."). *Cf. Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 539 (S.D.Ind.1999) (statements not discoverable where witnesses were known and available); *Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 259 (W.D.Va.1999) (same); *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 605 (M.D.Fla.1990) (statement not discoverable where party seeking statement "made no attempt" to depose or interview the witness).

Although the Court finds that the "unable to obtain the substantial equivalent" element has been satisfied with respect to the statements of Deena Sharp, Delonah Fisher and Tanya Gamez, the Court does not find that it has been satisfied with respect to Roger Zebill, whom Plaintiffs indicate they have deposed. The Court also finds that the element has not been satisfied with respect to Vicki McComas since there is nothing in the record indicating that Plaintiffs have made any attempt to depose or contact her.

Having established that they are unable to obtain the substantial equivalent of the witness statements of Deena Sharp, Delonah Fisher and Tanya Gamez through another source, Plaintiffs must next satisfy the substantial need factor. The Court finds that Plaintiffs have met this factor. Although Plaintiffs cannot know for sure what information the statements contain, they do know that the Roger Zebill statement which Denny's has already produced contains a "factual recitation" of the events giving rise to Plaintiffs' lawsuit. Plaintiffs' Reply (doc. 80) at 2. It is highly likely that the other witness statements will also contain a factual recitation of the alleged discriminatory incident as observed by each of them. All of these witnesses, like Mr. Zebill, were employed by Denny's and present at the time the alleged incident occurred. The facts of this case are highly disputed and each of these individuals appears to be an important fact witness. (This is particularly true in Deena Sharp's case since she is the individual who waited on Plaintiffs and who is alleged to have made one of the racially disparaging comments.) The Court therefore finds that Plaintiffs have shown a substantial need for the witness statements made by Deena Sharp, Delonah Fisher and Tanya Gamez. Thus, even if the Court were to find that Denny's had supported its objection and that the statements of these three individuals were work product, the Court would still find that they were discoverable under the necessity exception.

To summarize, the Court overrules Denny's work product objection and the other objections discussed above. The Court will grant Plaintiffs' motion to compel production of the witness statements, with the exception of (1) both of Roger Zebill's statements, and (2) Vicki McComas' statement.

## C. First Request for Production No. 3

This Request seeks "[a]pplicable handbooks, training materials, statements or other materials issued by Defendant to the Topeka, Kansas Denny's Restaurants delineating Defendants' policies in any way related to racism or discrimination for the five year period prior to February 1997." Denny's objects on the basis that the request seeks irrelevant information, is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad and unduly burdensome. Denny's also objects on the basis that the requested documents are covered by the Confidentiality Provisions of the Consent Decree and Stipulation.

### 1. Relevancy

The Court will first address Denny's objections as to relevancy. Relevancy is broadly construed, and a request for discov-

ery should be considered relevant if there is "any possibility" that the information sought may be relevant to the subject matter to the action. *Scott v. Leavenworth Unified School District No. 453,* 190 F.R.D. 583, 585 (D.Kan. 1999); *Etienne v. Wolverine Tube, Inc.,* 185 F.R.D. 653, 656 (D.Kan.1999). A request for discovery should be allowed "unless *it is clear* that the information sought can have *no possible bearing* on the subject matter of the action." *Scott,* 190 F.R.D. at 585 (quoting *Snowden v. Connaught Lab.,* 137 F.R.D. 336, 341 (D.Kan.1991)) (emphasis added by *Scott*). When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Scott,* 190 F.R.D. at 585 (citations omitted).

 On its face, this request appears to seek relevant materials. Whether Denny's has issued any handbooks, policies or statements regarding race discrimination relates not only to the factual issues of whether discrimination may have occurred and whether any racially derogatory comments were made, but also to Plaintiffs' claims that Denny's acted with reckless indifference to Plaintiffs' rights. Because the materials requested appear relevant, Denny's has the burden to establish the lack of relevance. Denny's has made no attempt to meet its burden, and, in fact, comes forward with nothing to support its irrelevance objection. The Court therefore overrules this objection.

### 2. Overly broad scope of the request

The Court will next turn to Denny's objection that the request is overly broad. Unless the request is overly broad on its face, Denny's, as the party resisting discovery, has the burden to support its objection. *Etienne v. Wolverine Tube, Inc.,* 185 F.R.D. 653, 656 (D.Kan.1999); *Daneshvar v. Graphic Technology, Inc.,* No. 97–2304–JWL, 1998 WL 726091, at *1 (D.Kan. Oct. 9, 1998). *Hilt v. SFC Inc.,* 170 F.R.D. 182, 186 (D.Kan.1997).

This includes any objection to the temporal scope of the request. *Daneshvar,* 1998 WL 726091, at *1; *Hilt,* 170 F.R.D. at 186.

The Court does not find the request or the time period overly broad on its face, and Denny's makes no attempt to support its overly broad objection. The Court therefore overrules this objection.

### 3. Unduly burdensome

The Court also overrules Denny's objection that the request is unduly burdensome. Again, Denny's has the burden to support this objection. *See Snowden v. Connaught Lab., Inc.,* 137 F.R.D. 325, 332 (D.Kan.1991). Denny's has the burden to show not only "undue burden or expense," but also to show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery. *Id.* Denny's has not even attempted to make such a showing. It makes no effort to show that the documents are voluminous or that any heavy expenditures of time, effort or money would be necessary to produced the requested documents. The Court therefore overrules this objection.

### 4. Confidentiality pursuant to the Consent Decree and Stipulation

 Denny's identifies nineteen items that it contends are responsive to this Request and covered by the Confidentiality Provisions. It asserts that these materials, which include a "Leader's Manual," a training workbook, training videos, and "Guest Services and Public Accommodations Policies," would not have come into existence but for the Consent Decree.

The Court finds that these materials were created as a result of the Consent Decree, specifically Sections X.A, X.B, and X.C. The Court will therefore sustain Denny's objections to producing the eighteen items identified on pages 3 and 4 of its Supplemental Memorandum (doc. 111) and the additional item identified on page 1 of its Supplement to Supplemental Memorandum (doc. 113). To the extent, however, that Denny's possesses any other materials responsive to this request (for example, any policies or handbooks that it has not identified and that may pre-

date the Consent Decree), Denny's must produce those documents.

### D. First Request for Production No. 4

This Request seeks "[a]ll personnel files, including any disciplinary records or complaints, supervisory files both formal and informal, for all employees of all Topeka area Denny's restaurants from February 1992 to present." Denny's objects, asserting attorney-client privilege, work product immunity, irrelevance, undue burden, remedial action, and protection by the Confidentiality Provisions.

#### 1. Attorney-client privilege

Denny's makes no attempt to support its assertion of attorney-client privilege, and, thus, the Court overrules this objection.

#### 2. Work product immunity

With respect to work product immunity, Denny's asserts that some of the personnel files contain the witness statements it identified in response to First Request No. 2 and should not be disclosed. Given that the Court has overruled Denny's objections to producing the witness statements, this objection must also be overruled.

#### 3. Unduly burdensome

Denny's has not even attempted to support its undue burden objection. The Court therefore overrules this objection.

#### 4. Overly broad in scope and relevancy

With respect to its overly broad and irrelevant objections, Denny's asserts that it has two restaurants located in Topeka, Kansas: one located on South Topeka Boulevard and the other located on Wanamaker Road. Denny's contends that only the requested documents for the South Topeka Boulevard restaurant, where the incident occurred, would be relevant or likely to lead to the discovery of admissible evidence. The Court agrees.

■ While the Court has been unable to locate any case law addressing this issue in the context of this case, the case law dealing with employment discrimination would appear to be applicable. Employment discrimination cases have held that in determining

the geographic scope of discovery for non-class complaints, the focus should be upon the source of the complained discrimination, *i.e.*, the unit or facility that employed the plaintiff, absent some showing of particularized need and relevance. *See, e.g., Mackey v. IBP, Inc.*, 167 F.R.D. 186, 195 (D.Kan.1996) (limiting scope of discovery to defendant's Emporia plant that employed plaintiff); *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D.Kan.1995) (limiting scope to plaintiff's employing unit). Similarly, the focus here should be upon the restaurant where the alleged discriminatory conduct occurred. The Court will therefore limit this request to the South Topeka Boulevard restaurant.

The Court must now determine whether all of the personnel files and the other requested documents for the South Topeka Boulevard restaurant should be produced. Again, the Court was unable to locate any case law addressing this issue in this context, but finds that cases decided in the employment discrimination context are helpful. Those cases have held that merely because a person may be called as a witness at trial does not justify disclosure of his/her personnel file. *See, e.g., Hicks v. Kansas Masonic Home*, No. 97–1307–MLB, 1998 WL 173197, at *2 (D.Kan. March 5, 1998); *Haselhorst v. Wal–Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D.Kan.1995). If, however, the individual is alleged to have engaged in the discrimination or harassment at issue or played an important role in the employment decision or incident that gives rise to the lawsuit, the personnel file will be considered relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable. *See, e.g., Daneshvar v. Graphic Technology, Inc.*, No. 97–23044–JWL, 1998 WL 726091, at *5 (D.Kan. Oct. 9, 1998) (compelling production of personnel files of three "key witnesses" who "played important roles in the employment decisions affecting plaintiff"); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D.Kan.1996) (compelling production of personnel files of alleged harasser and employer's chief executive officer); *Hoskins v. Sears, Roebuck and Co.*, No. 96–1357–MLB, 1997 WL 557327, at *2 (D.Kan. Sept. 2, 1997) (compelling production of personnel files of "eight individuals who

are alleged to have been involved in, witnessed, or failed to report" the claimed harassment). *See also Leighr v. Beverly Enterprises–Kansas Inc.*, No. 94–2474–GTV, 1996 WL 63501, at *2 (D.Kan. Feb.7, 1996) (noting that the "personnel file of an allegedly discriminatory defendant would appear to contain relevant information," but declining to compel production of the file after reviewing defendant's itemization of the files contents and finding nothing relevant to plaintiff's discrimination claims).

Applying these standards, the Court finds that Plaintiffs are entitled to discover the personnel files of those employees of the South Topeka Boulevard restaurant who allegedly participated in, were involved in, or witnessed any of the claimed discriminatory or other wrongful events giving rise to this lawsuit. All documents contained within those employees' personnel files shall be produced to Plaintiffs, with the exception of any documents that the Court finds are protected under the Confidentiality Provisions, as set forth below in subpart 6.

### 5. Remedial action

■ Denny's further objects to this request "because it asks for documents that may evidence remedial action taken by defendant Denny's." Denny's provides no case law for this proposition, and the Court can find none. Denny's is apparently confusing admissibility with discoverability. Federal Rule of Evidence 407 provides that evidence of subsequent remedial measures is not admissible to prove negligence, culpable conduct, and certain matters relating to product liability law. Even if applicable to this case, the Rule limits the *admissibility* of evidence, and not its *discovery*. The Court therefore overrules this objection.

### 6. Confidentiality pursuant to the Consent Decree and Stipulation

■ Denny's also objects to producing any documents from the personnel files that contain "information provided to employees about the decree." Denny's Response (doc.

76) at 7. Specifically, Section X.C.1.a of the Consent Decree provides that employees shall be provided with certain information about the Consent Decree and Denny's non-discrimination policies and that employees are to execute statements acknowledging receipt of this information. Consent Decree at pp. 18–19. In addition, Section X.C.2.d provides that any employee who participates in a Denny's training programs shall sign a statement acknowledging participation in the program. *Id.* at p. 26.

Denny's does not specifically identify the documents in each personnel file that it contends came into existence because of the Consent Decree. It does, however, identify a group of nineteen documents that are generally responsive to Request Nos. 3 and 4. Twelve of those documents (nos.6–12, 14–18) are "We Can" Attendance Logs, "We Can" Class Rosters, and "Acknowledgments and Agreements to Abide by Consent Decree and Non–Discrimination Policies" that were signed by various employees The Court assumes that these twelve documents are the personnel file documents that Denny's contends are protected by the Confidentiality Provisions.[5]

The Court finds that these twelve documents are covered by the Confidentiality Provisions and that they came into existence only as a result of the Consent Decree. The Court thus rules that they are protected by the Confidentiality Provisions. The Court will therefore sustain Denny's objection to producing from the personnel files these particular twelve documents and any other "We Can" Attendance Logs, "We Can" Class Rosters, and "Acknowledgments and Agreements to Abide by Consent Decree and Non–Discrimination Policies," which were signed by other employees.

To summarize, Denny's is required to produce the personnel files of those employees of the South Topeka Boulevard restaurant who allegedly participated in, were involved in, or witnessed any of the claimed discriminatory or other wrongful acts giving rise to

5. The other documents identified as generally responsive to Request Nos. 3 and 4 are not the type of documents one would expect to find in a

personnel file, *i.e.*, a workbook, a Leader's Manual, and a training video.

this lawsuit, with the exception of the following documents contained therein: (1) "We Can" Attendance Logs, (2) "We Can" Class Rosters, and (3) "Acknowledgments and Agreements to Abide by Consent Decree and Non–Discrimination Policies."

### E. First Request for Production No. 5

 This request seeks "[a]ll records or other documentation of customer complaints lodged against any Topeka area Denny's restaurant from February 1992 to present alleging racial or other discriminatory treatment." Denny's objects on the basis that the request is overly broad and unduly burdensome and seeks irrelevant information. Denny's also objects to the term "Topeka area" as ambiguous, noting that it has two restaurants in Topeka. It also objects to the five-year time period as overly broad and placing an undue burden on Denny's. Finally, it objects to the request because it is not limited to the "same type or incident similar to the incidents alleged in this lawsuit."

For the same reasons set forth above in Part C, the Court overrules Denny's overly broad and burdensome objections and the objection to the five-year time period. The Court also overrules Denny's objection that the term "Topeka area" is vague and ambiguous[6]; however, for the same reasons discussed above in Part D, the Court will limit the request to the South Topeka Boulevard restaurant where the alleged incident occurred. The Court will also limit the request to complaints of race discrimination (including any complaints of racial harassment), since race is the only asserted basis of discrimination in this case. *See Jackson v. Montgomery Ward & Co., Inc.,* 173 F.R.D. 524, 528 (D.Nev.1997) (limiting discovery to same types of discrimination alleged by plaintiff); *Gheesling v. Chater,* 162 F.R.D. 649, 651 (D.Kan.1995) (same).

### F. First Request for Production No. 6

This requests seeks "[a]ll materials provided to or received from the Civil Rights Monitor in response to Plaintiffs' Complaints."

The only objection Denny's asserts to this request is based on the Confidentiality Provisions. In Denny's response to Plaintiffs' Motion to Compel, Denny's reasserts the objection (*see* doc. 76 at p. 7), but does not identify, either generically or specifically, any of the documents that it contends fall within the scope of this request. In its supplemental memorandum (doc. 111), Denny's does not even address this request. The Court therefore finds this objection unsupported, and overrules it. Denny's shall produce the requested documents.

### G. Request for Production No. 7

This request seeks "[a]ll consent decrees entered into by Denny's related to racial discrimination in the service provided to ethnic or racial minority patrons." Denny's objects on the grounds of confidentiality and relevancy.

#### 1. Confidentiality

Denny's objects to "the production of court orders to the extent any court orders exist, if those orders state that they are to be confidential in nature." Nowhere in its objections, or, for that matter, in its response to the Motion to Compel or supplemental memorandum, does Denny's identify any such court orders. Denny's does make a passing reference to this request in its response to the Motion to Compel and appears to be asserting that the *Dyson v. Flagstar* Consent Decree (the decree discussed herein) is itself protected from disclosure by the Confidentiality Provisions. Even assuming this is true, Denny's has already provided Plaintiffs with a copy of the Consent Decree (*see* Exhibit B to Denny's response to Plaintiffs' Motion to Compel), and the objection is moot as to that particular decree.

With respect to any other consent decree or court order that Denny's may contend is confidential, the Court will overrule Denny's objection since Denny's has not identified any court opinion or order requiring it to keep any court order confidential. Moreover, confidentiality does not necessarily bar

---

**6.** The Court notes that Denny's failed to object to the term as being vague and ambiguous as used

in the preceding request.

discovery, and, in many cases, confidentiality concerns may be addressed with an appropriate protective order. *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 196 (D.Kan.1996). In light of the above, the Court overrules this objection

### 2. Relevancy

Denny's also objects on the basis of relevance. Once again, however, Denny's does not support its objection. The Court therefore overrules this objection. Denny's shall produce the requested documents.

### H. First Request for Production No. 8

This request seeks "[a]ll materials received from or provided to the Civil Rights Compliance Division related to Plaintiffs' complaints." Denny's objects, stating that, to its knowledge, such an agency does not exist. Denny's does state, however, that it would "revisit" its response if Plaintiffs would clarify the request. Plaintiffs do not address this objection in their briefs, and, as best as the Court can determine, Plaintiffs have made no effort to clarify the request for Denny's. Like Denny's, the Court is also not aware of any such entity. The Court will therefore sustain Denny's objection to this request.

### I. First Request for Production No. 9

This request seeks all statements of witnesses "to any fact relevant to Defendants' defenses asserted in their answer to Plaintiffs' complaint." Because this request is similar to First Request No. 2 and because Denny's asserts the same objections it asserted it response to that request, the Court makes the same ruling here and for the same reasons discussed above with respect to Request No. 2 (*see* Part B above).

### J. First Request for Production No. 10

■ This request seeks "[c]opies of all documents identified by Defendants in their initial disclosures and any supplemental or final lists of exhibits to be filed in this case."

### 1. Confidentiality pursuant to K.S.A. 44–1005(e)

Denny's objects again to producing the three letters it provided to the KHRC, based on K.S.A. 44–1005(e). For the same reasons discussed above in Part A, the Court overrules this objection.

### 2. Attorney-client privilege and work product immunity

Denny's also asserts attorney-client privilege and work product protection, as follows:

Defendant objects to the production of the documents identified in paragraphs 1, 2, 3, 4, 6, 7, 8, 9, 10, 13, 14 and 16 of Defendant's Rule 26(a) Disclosures based on work product privilege and attorney-client privilege.

The Court does not have a copy of Denny's Disclosures or the privilege log that apparently accompanied the Disclosures. In its response to Plaintiffs' Motion to Compel, Denny's states that it objects to producing a "corporate investigative file," but does not identify the contents of that file or describe the circumstances under which the file was created. It merely states that the file "is identified extensively in Defendant's Rule 26(a) disclosures." Denny's Resp. to Motion to Compel (doc. 76) at 3. In its supplemental memorandum, Denny's identifies only three documents that are responsive to this request and states that it identified those documents in its Rule 26(a) privilege log. Those three documents are described as memoranda prepared by three different Denny's human resources personnel that were "generated as a result of the investigation [into Plaintiffs' complaints] allowed by the Monitor." Denny's Supp. Mem. (doc. 111) at 8–9. One of those memoranda was addressed to Denny's corporate counsel. Denny's provides the Court with no additional information about any of these claimed privileged documents.

As noted above, Fed. R. Civ. P 26(b)(5) requires the party withholding documents under a claim of privilege or work product immunity to specifically describe the nature of the documents. In addition to describing the documents "in detail," the party must provide "precise reasons" for the objection to the discovery. *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D.Kan.1994). This information must be sufficient to allow the court to determine wheth-

er each and every element of the asserted objection has been satisfied. *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995).

Applying these standards, the Court finds that Denny's assertion of privilege and work product immunity is inadequate in the following respects. First, Denny's fails to specify whether each document is being withheld under a claim of attorney-client privilege or attorney work product (or both). *See Johnson v. Gmeinder,* Nos. 98–2556–GTV, 98–2585–GTV, 1999 WL 1095463, at *3 (D.Kan. Nov.19, 1999) (objection inadequate where defendants failed to specify which privilege, *i.e.,* work product or attorney-client privilege, they were relying upon); *First Sav. Bank v. First Bank Sys., Inc.,* No. 95–4020–SAC, 1995 WL 250394, at *4 (D.Kan. Mar.30, 1995) (same).

Second, with the exception of the three memoranda identified in its Supplemental Memorandum, Denny's makes no attempt to identify the documents that it claims are privileged and/or protected. The Court has no idea what documents Denny's may have identified in its disclosures.

Third, with respect to the three memoranda that Denny's does identify in its supplemental memorandum, Denny's fails to provide any evidentiary basis to support its privilege/work product objections. This is discussed below in detail with respect to each objection.

### a. Attorney-client privilege

■ Because this action arises under a federal statutory scheme, federal law provides the rule of decision at to application of the attorney-client privilege. *See Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1368–69 (10th Cir.1997) (federal privilege law applies to federal claims). Under federal common law, the essential elements of the attorney-client privilege are:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advis-

or, (8) except [where] the protection be waived.

*Marten v. Yellow Freight Sys., Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *4 (D.Kan. Jan.6, 1998) (quoting *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 196 n. 4 (D.Kan.1993)). The privilege "protects confidential communications made by a client to an attorney in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." *Marten,* 1998 WL 13244, at *6 (quoting *Jones v. Boeing Co.,* 163 F.R.D. 15, 117 (D.Kan. 1995)).

■ Denny's conclusory allegation that the attorney-client privilege applies to these three memoranda does not satisfy its burden of proof. *See Marten,* 1998 WL 13244, at * 4 ("blanket claim" that privilege applies is not sufficient to meet burden of establishing privilege). Denny's has made no evidentiary showing with respect to any of these memoranda that each element of the attorney-client privilege is satisfied.

### b. Work product immunity

■ Denny's has also failed to establish the applicability of the work product doctrine to these three memoranda, most notably because it fails to establish that they were prepared in anticipation of litigation.

In light of the above, the Court overrules Denny's assertion of the attorney-client privilege and work product immunity as to these three memoranda, as well as to any other documents that are responsive to this request. Denny's shall therefore produce all documents responsive to this request.

### K. First Request for Production No. 11

This requests seeks "all documentation, notes or other writings made by the wait staff or other employees in any way related to Plaintiffs' visit to Defendants' restaurant on or about February 21, 1997." Denny's objects on the basis of attorney-client privilege and work product. It also objects on the basis of the Confidentiality Provisions. Denny's identifies the same witness statements it identified in response to Plaintiffs' First Request for Production No. 2. The

Court makes the same rulings here that it made with respect to that request. (*See* Part B above.)

### L. First Request for Production Nos. 12 and 13

Request No. 12 seeks "all material evidencing an employment or other relationship between Defendant Monosmith and Defendant Denny's." Denny's objects on the basis of the Confidentiality Provisions. It does, however, state that it will produce Monosmith's W-4 form and his 1099 forms for the year 1997.

Request No. 13 seeks "[a]ll job descriptions, policies or other directives or directions related to Defendant Monosmith's position with Defendants Denny's." Denny's again objects on the basis of the Confidentiality Provisions.

In its supplemental memorandum, Denny's identifies four documents that are responsive to these requests, including signed acknowledgment forms relating to the Consent Decree, a signed "Completion of Training Program" form, and a document entitled the "Duties and Objectives of the Security Guard." The Court finds that these four documents are covered by the Confidentiality Provisions and that they would not have come into existence but for the Consent Decree. The Court therefore upholds Denny's objection *as to these four documents.* To the extent that any other responsive documents exist, the objection is overruled, and Denny's shall produce the documents.

### M. First Request for Production Nos. 14 and 15

Request No. 14 seeks "all material evidencing a 'hold harmless agreement' between the city of Topeka and Defendant Denny's, Inc. regarding Defendant Monosmith." Request No. 15 seeks "[a]ny evidence of permission by the city of Topeka for Defendant Monosmith to work as security in his 'off-duty' time." Denny's objects to both requests on the basis that the documents sought are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

The Court finds that the requests seek relevant information and overrules the objections. The Court notes that in response to Request No. 15, Denny's has stated that, without waiving its objections, "it has no such documents in its possession." Denny's must, however, produce not only responsive documents in its "possession," but also those responsive documents in its "custody or control." *See* Fed.R.Civ.P. 34(a) (party must produce all responsive documents in its "possession, custody or control"). A party may retain the requisite control or custody of documents even if they are outside the party's actual possession. *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295 307 (D.Kan.1996). The Court will therefore order Denny's to produce all responsive documents in its possession, custody or control. If it has already done so, it shall affirmatively state so in a supplemental response.

### III. PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION

#### A. Second Request for Production No. 1

This request seeks "[a]ll materials provided to or received from the Kansas Human Rights Commission, the Topeka Human Relations Commission or any similar agency relating to any complaints based on discrimination filed against the Topeka Denny's restaurants from 1992–1997." Denny's objects on the basis that the request seeks irrelevant information and is overly broad and unduly burdensome. It also objects on the basis of attorney-client privilege, work product immunity, and the KAAD confidentiality provision contained in K.S.A. 44–1005(e).

##### 1. Overly broad in scope, relevancy, and undue burden

Denny's does little to support these objections. Denny's does, however, assert that it should not have to produce these documents for the Wanamaker Road restaurant. For the reasons discussed above in Part I.D, the Court finds that the request should be limited to the South Topeka Boulevard restaurant where the alleged incident took place. Denny's also objects to the five-year time period. For the same reasons discussed above in

Part I.C, the Court finds the five-year time period reasonable.

Denny's also objects to the request because it is not limited to "complaints filed under the same or similar circumstances as plaintiffs' complaints." Resp. to Motion to Compel (doc.76) at 5, n 2. For the reasons discussed above in Part I.D, the Court will limit the request to complaints of race discrimination and racial harassment.

### 2. Attorney-client privilege and work product immunity

Denny's does not support its assertion of attorney-client privilege, and even if some of the documents were privileged, the privilege would have been waived upon producing the documents to the agency. The Court likewise finds that Denny's has not supported its work product objection. In addition, the Court has already ruled that any documents, even if protected work product, would have lost their protected status when they were provided to the KHRC or other agency investigating the party for discrimination or other unlawful conduct. *See* March 21, 200 Memorandum and Order (doc. 118). These objections are therefore overruled.

### 3. Confidentiality pursuant to K.S.A. 44–1005(e)

The Court has previously rejected Denny's argument that K.S.A. 44–1005(e) shields from discovery any documents provided to the KHRC. *See id.* The Court therefore overrules this objection.

### B. Second Request for Production No. 2

This request seeks "[a]ll materials upon which answers to the propounded interrogatories relied." Denny's response states: "Defendant incorporates by reference the objections set forth in Defendant's Objections to Plaintiffs' Interrogatories." It also states that it relied on no documents for its answers to Interrogatory Nos. 1 and 4.

As indicated in Part IV below, the Court is overruling many of Denny's objections to the interrogatories. Denny's shall therefore supplement its response to this request after it

has supplemented its interrogatory answers as ordered below.

### C. Second Request for Production No. 3

■ This request seeks copies of "all Denny's policies, guidelines, training materials, employee handbooks, supervisor's handbooks, and any other corporate policies maintained at the Topeka Denny's facilities in February 1997." Denny's objects to this request as overly broad, unduly burdensome, and seeking irrelevant information. It also objects on the basis of work product, attorney-client privilege, and the Confidentiality provisions.

### 1. Overly broad in scope, undue burden, and relevancy

Specifically, Denny's objects to producing documents for the Wanamaker Road restaurant. It also asserts that the request would require Denny's to produce hundreds of policies, training materials, and other documents that have no relevance to the lawsuit.

The Court agrees that only documents maintained at the South Topeka Boulevard restaurant should be produced. The Court also finds the request overly broad and irrelevant on its face. Plaintiffs do not meet their burden to show how all of these documents would be relevant or lead to the discovery of admissible evidence. While policies, guidelines, and training materials relating to customer service and racial discrimination would clearly be relevant, the Court can imagine many other types of policies training materials, and handbooks relating to restaurant operations that would have absolutely no bearing on any of the issues in this case. The Court will therefore sustain in part and deny in part Denny's objections. The Court orders Denny's to produce only those policies and other requested materials that pertain to customer service, customer complaints, security issues, and discrimination or harassment. Only those materials maintained at the South Topeka Boulevard restaurant in February 1997 shall be produced.

### 2. Attorney-client privilege and work product

Denny's provides no support for these objections, and the Court is at a loss to even imagine how any of the requested documents would fall within the scope of those privileges. The Court therefore overrules these objections.

### 3. Confidentiality pursuant to the Confidentiality Provisions

Denny's identifies on pages 3 and 4 of its supplemental memorandum and page 1 of its supplement to its supplemental memorandum various items that it contends are covered by the Consent Decree and that came into existence as a result of the Decree. Those items include a training video and various policies, manuals, and workbooks. The Court agrees that all nineteen of the items identified are protected by the Confidentiality Provisions and would not exist but for the Consent Decree. The Court therefore upholds this objections as to these particular documents. To the extent that any other policies or other materials responsive to this request exist, Denny's shall produce them.

## IV. PLAINTIFFS' FIRST INTERROGATORIES

### A. Interrogatory No. 2

■ This interrogatory seeks information about complaints filed with the KHRC, the Topeka Human Relations Commission or "any similar agency" against either of the Topeka restaurants for the period 1992 to present. It asks for the following specific information:

a. The complainant's full name, last known address and telephone number;

b. The date of the complaint;

c. The allegations made in the complaint;

d. Which restaurant was involved;

e. Which Denny's employees were involved;

f. What action was taken by Denny's in response to each complaint?

Denny's objects on the basis that the interrogatory is overly broad and unduly burdensome and because it seeks irrelevant infor-

mation. Denny's also objects on the basis of attorney-client privilege and work product immunity. Finally, Denny's asserts that the term "any similar agency" is vague and ambiguous.

### 1. Attorney-client privilege and work product immunity

Denny's does not support these objections. Furthermore, the Court has already ruled that any documents provided to the KHRC or other agency investigating a party for discrimination or other unlawful acts results in waiver of any work product immunity. See March 21, 2000 Memorandum and Order (doc. 118). These objections are therefore overruled.

### 2. Overly broad in scope, undue burden and relevancy

Denny's makes no specific objections other than to object to providing information for the five-year period and for the Wanamaker Road restaurant. For the reasons discussed above, the Court finds the five-year time frame reasonable and overrules the objection to the time period. The Court, however, agrees with Denny's that the interrogatory should be limited to the South Boulevard Topeka restaurant. The Court will also limit the interrogatory to complaints of racial discrimination and/or racial harassment.

### 3. Vague and ambiguous

The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 310 (D.Kan.1996). A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories." *Id.* If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue. *Id.*

Denny's has not carried its burden to show that the term "any similar agency" is vague and ambiguous. When taken in context with the rest of the sentence, it should be apparent to Denny's that the term refers to agencies like the KHRC or Topeka Human Rights Commission which receive and inves-

tigate claims of discrimination. This objection is therefore overruled.

### B. Interrogatory No. 3

 This interrogatory asks whether there have been "any customer complaints based on race lodged against either of the Topeka Denny's restaurants from 1992 to the present." It then requests specific information about any such complaints. Denny's objects to the language "based on race" as being vague and ambiguous. It further objects to the interrogatory as being overly broad and unduly burdensome. It also objects "to the extent that it seeks information that is protected by the attorney-client privilege or work product privilege." It then states: "Without waiving this objection and subject to it, see the document produced to plaintiffs on August 10, 1999, which represents plaintiff Jacqueline McCoo's customer complaint...."

#### 1. Vague and ambiguous

Denny's fails to meet its burden to show that the term "complaint *based on race*" is vague and ambiguous. It is apparent to the Court that the term is referring to any complaint asserting racial discrimination or harassment. Indeed, Denny's apparently interpreted the interrogatory in this manner inasmuch as it referred Plaintiffs to a document "representing" Plaintiff McCoo's customer complaint. The Court will therefore overrule this objection.

#### 2. Overly broad in scope and unduly burdensome

Denny's asserts that (1) the interrogatory is not limited to the " 'same or similar circumstances' as those alleged in Plaintiffs' complaint;" (2) the interrogatory asks for information about the Wanamaker Road restaurant; and (3) the five-year time period is unreasonable. For the same reasons discussed above, the Court sustains the objection as to the Wanamaker Road restaurant, but overrules the objection to the five-year time frame. In addition, the Court overrules the objection that the interrogatory is overly broad because it is not limited to the "same or similar circumstances." As noted above,

the term "based on race" means complaints of racial discrimination and racial harassment, which the Court has found is relevant and appropriately limited.

#### 3. Attorney-client privilege and work product immunity

Denny's fails to support these objections in any way. Moreover, the Court notes that, generally speaking, the work product doctrine protects only documents and tangible things, and does not protect from disclosure facts that the adverse party's lawyer has learned. *See Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* 1995 WL 625962, at *9 (D. Kan.1995). These objections are therefore overruled.

### C. Interrogatory No. 5

This interrogatory asks Denny's to identify all persons employed at the Topeka Denny's restaurant on Wanamaker Road for the time period 1992—1997. Denny's asserts numerous objections, one of which is that the interrogatory seeks information irrelevant to this case. The Court agrees that the Wanamaker Road restaurant is not relevant to any of the issues in this lawsuit. The Court therefore sustains this objection, and Denny's need not answer this interrogatory.

### D. Interrogatory No. 6

 This interrogatory asks Denny's to identify all persons employed at the Topeka Denny's restaurant on South Topeka Boulevard for the time period 1992—1997. For each employee identified, it requests the employee's address, telephone number and race, the dates of employment, the positions and titles held, and the reason for separation, if applicable. Denny's generally objects on the basis that the interrogatory seeks irrelevant information and is unduly burdensome. It also specifically objects to the five-year time period as unreasonable. Denny's asserts that information about employees is not relevant since this is not an employment discrimination case. It does, however, provide the names of the seven employees who were working at the restaurant at the time of the alleged incident.

Denny's does not support its unduly burdensome objection with any evidence of the amount of time or expense required to provide this information. This objection is therefore overruled.

With respect to relevancy, the Court is not persuaded by Denny's argument that because this case involves discrimination against *customers, employee* information is wholly irrelevant. Plaintiffs could use the requested information to contact employees regarding Denny's treatment of other customers and any other similar incidents or customer complaints. The requested information might also yield information about employees terminated for engaging in discrimination.

While the Court finds that the information could lead to the discovery of admissible evidence, the Court fails to see how employee information for the entire requested five-year period is relevant. The Court believes a more reasonable time frame to be February 21, 1996 (one year prior to the February 21, 1997 incident) through the end of 1997. The Court will therefore sustain Denny's objection in part. Denny's is ordered to respond to this interrogatory, but only for the period February 21, 1996 through December 31, 1997.

### E. Interrogatory No. 7

■ This interrogatory asks Denny's whether any of the employees identified in Interrogatory Nos. 5 and 6 complained of racial discrimination and asks Denny's to identify the employee, the date of the complaint, the nature of the complaint, and any action taken by Denny's. Denny's objects on the basis that the requested information is irrelevant since this case involves alleged racial discrimination against customers and not employees.

The Court does not agree. The Court finds that this information (as limited to the employees of the South Topeka Boulevard store and the time period described above in Part IV.D) may lead to the discovery of admissible evidence. This objection is therefore overruled in part and sustained in part. Denny's shall serve a supplemental response to this interrogatory.

### F. Interrogatory No. 8

■ This interrogatory asks whether any of the employees identified in response to Interrogatory No. 5 or 6 have been disciplined for engaging in race discrimination and asks for the employee name and the date of, reason for, and kind of, any discipline. Denny's again objects on the basis of relevancy. As with Interrogatory No. 7, the Court finds that the information (as limited to the employees of the South Topeka Boulevard store and the time period described above in Part IV.D) may lead to the discovery of admissible evidence. This objection is therefore overruled in part and sustained in part. Denny's shall serve a supplemental response to this interrogatory.

## V. PLAINTIFFS' REQUEST FOR FEES AND EXPENSES

Plaintiffs seek their reasonable expenses, including attorney fees, incurred in preparing the Motion to Compel. Federal Rule of Civil Procedure 37(a)(4)(C) allows a court to impose sanctions where, as here, a motion to compel is granted in part and denied in part. Under that rule, the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Fed.R.Civ.P. 37(a)(4)(C).

In this case, the Court has overruled the majority of Denny's objections. The Court finds that most of the objections were not substantially justified. The Court thus deems it just to allow Plaintiffs to recover a portion, if not all, of the reasonable expenses, including attorney fees, that they incurred in bringing their Motion to Compel.

To aid the Court is determining the proper amount of expenses, Plaintiffs' counsel shall file, on or before May 1, 2000, an affidavit itemizing the expenses, including attorney fees, that Plaintiffs incurred in bringing this Motion to Compel. Denny's shall have until May 15, 2000 to file a response to the affidavit. The Court will then issue a second order, apportioning the expenses and fees and specifying the amount and time of payment.

■ The Court recognizes that before Rule 37(a)(4) sanctions may be imposed against a party, the Court must afford the party an "opportunity to be heard." *See id.* The Advisory Committee Notes to the 1993 Amendments to Fed.R.Civ.P. 37(a)(4) make it clear that the Court may consider the issue of sanctions "on written submissions." Here, Plaintiffs specifically requested their expenses in their Motion to Compel. Denny's responded to the Motion, but chose not to address the sanctions issue. The Court therefore finds that Denny's has had sufficient "opportunity to be heard" within the meaning of Fed.R.Civ.P. 37. *See Boilermaker–Blacksmith Nat'l Pension Fund v. Nevada Boiler Works, Inc.,* No. 96–2168–GTV, 1997 WL 118443 (D.Kan. Mar.11, 1997) ("opportunity to be heard" requirement of Rule 37(a) satisfied where party had opportunity to address, but did not address, sanctions in response to motion to compel containing request for sanctions).

■ Having determined that Plaintiffs are entitled to recover at least a portion, if not all, of their reasonable expenses, the Court must next determine whether Denny's counsel or Denny's should be required to pay the sanctions. To the extent possible, sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct. *White v. General Motors Corp. Inc.,* 908 F.2d 675, 685–86 (10th Cir.1990) (imposing Rule 11 sanctions); *Starlight Int'l, Inc. v. Herlihy,* 190 F.R.D. 587, 593 (D.Kan. 1999) (imposing Rule 26(g) and 37(b) and (d) sanctions); *Giroux v. Farm Credit Bank of Wichita,* No. 95–1499–MLB, 1997 WL 109733, at *1 (D.Kan. Feb. 13, 1997) (imposing Rule 37(a)(4) sanctions). The sanctioning of a *party,* as opposed to the party's *counsel,* "requires specific findings that the party was aware of the wrongdoing." *Id.* (citing *White,* 908 F.2d at 685–86). In the absence of any evidence that Denny's was responsible for the unsupported objections made here, the Court finds it appropriate to hold Denny's counsel[7] solely responsible for paying the

monetary sanctions. *See Starlight Int'l,* 190 F.R.D. at 594 (attorneys rather than parties responsible for insuring adequacy of responses to requests for production). The Court also finds it appropriate to assess the sanctions against counsel rather than Denny's based on counsel's Rule 11 and Rule 26(g) obligations.

Under Rule 11, counsel has the duty to ensure that the legal and factual contentions he/she sets forth in every pleading are "warranted by existing law" and "have evidentiary support." Fed. R Civ. P. 11(b)(2) and (3). Rule 26(g)(2) expounds on that duty as it applies to responses and objections to discovery requests. It provides in pertinent part:

> Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is:
>
> > (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; [and]
> >
> > (B) not interposed for a any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation....

Fed.R.Civ.P. 26(g)(2).

Given the importance of this duty, Rule 26(g)(3) permits a court, upon motion or upon its own initiative, to impose sanctions upon the attorney making the certification, including payment of the reasonable expenses and attorney fees incurred because of the violation.

The Court is well aware of counsel's obligations to act as an advocate for his/her client and to use legal procedure for the

---

7. Pursuant to Kansas Rule of Professional Conduct 5.1 and the comment thereto, the partners or shareholders in a law firm are responsible for making reasonable efforts to assure that all lawyers in the firm conform to the rules of professional conduct. The Court therefore holds that the law firm representing Denny's rather than the individual attorneys shall be responsible for payment of the expenses.

**698**

fullest benefit of the client. *See* Kansas Sup. Ct. Rule 226, KRPC 3.1 cmt. Those obligations, however, must be tempered against counsel's duty not to abuse legal procedure. *See id.* Thus, even if the client directs counsel to respond to discovery requests in a certain manner, counsel has the *ultimate obligation* to ensure that the responses and objections are well grounded in fact and law.

In light of the above rules, the Court concludes that Denny's counsel, rather than Denny's, had the ultimate responsibility for ensuring that its objections were proper. Since counsel failed to meet that obligation with respect to a number of the asserted objections, the Court holds that counsel should be responsible for payment of Plaintiffs' expenses and fees.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby grants in part and denies in part Plaintiffs' Motion to Compel Discovery (doc. 74). On or before *May 1, 2000,* Denny's shall supplement its answers to Interrogatories 2–3 and 6–8, as directed herein. It shall also produce, on or before *May 1, 2000,* documents responsive to First Request for Production Nos. 1–7 and 9–15 and Second Request for Production Nos.1–3, as directed herein. Such production shall take place at the offices of Plaintiffs' counsel or at any other location agreed upon by the Parties. The Court hereby grants Plaintiffs' request for expenses as set forth herein. On or before *May 1, 2000*, Plaintiffs shall file an affidavit itemizing the expenses, including attorney fees, that Plaintiffs incurred in bringing this Motion. Denny's shall have until May 15, 2000 to file a response to the affidavit.

IT IS SO ORDERED.