**Dena SWACKHAMMER, Plaintiff,**

v.

**SPRINT CORPORATION PCS, Defendant.**

**No. 03–2548–CM–DJW.**

United States District Court, D. Kansas.

Dec. 13, 2004.

---

Frank B.W. McCollum, Stacy M. Bunck, McCollum & Parks, L.C., Kansas City, MO, for Plaintiff.

Amy Rush, Sharon A. Coberly, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court is Plaintiff's Motion to Compel (doc. 67). Plaintiff seeks to compel Defendant to respond to certain interrogatories and to produce three documents identified in Defendant's Amended Privilege Log that Plaintiff contends are not privileged. Plaintiff indicates in her reply brief that all issues relating to the Amended Privilege Log have been resolved. The Court will therefore address only the interrogatory answers.

## I. Introduction

This is an employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended. Plaintiff asserts claims for gender discrimination, alleging that while she was employed as Vice–President of Defendant's Strategic Business Unit, she was subject to disparate treatment.[1] Plaintiff also alleges that she was terminated from her employment with Defendant in October 2002 because of her gender.[2] She claims that other similarly situated vice-presidents of Defendant were not terminated even though they violated the same policies that she allegedly violated.[3]

---

**1.** Complaint (doc. 1), ¶¶ 10, 11.

**2.** *Id.*, ¶ 22.

**3.** *Id.*, ¶¶ 20, 21.

**4.** *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 671 n. 37 (D.Kan.2004). The party filing the motion to compel has the initial burden

## II. Plaintiff's First Interrogatories

Plaintiff moves to compel answers to Plaintiff's First Interrogatory Nos. 4 and 5. Defendant responded to these interrogatories on April 9, 2004. Then, on May 11, 2004, Defendant provided supplemental responses. The supplemental responses are at issue in this Motion to Compel.

### A. Defendant's "General Objections"

Before turning to the specific responses and objections made by Defendant, the Court must address Defendant's "General Objections." Defendant asserted five "General Objections" to each of the First Interrogatories. It also asserted specific objections to each individual interrogatory. One of Defendant's "General Objections" was overbreadth. Defendant reasserted that particular objection in its individual responses to First Interrogatory Nos. 4 and 5. With the exception of the overbreadth objection, Defendant's General Objections are not discussed by either party in their briefs.

■ In most circumstances, where a moving party fails to address an objection in its motion to compel, the Court will allow the objection to stand, even though the party asserting the objection failed to address it or raise it in its response to the motion to compel.[4] The objection, however, must have some merit on its face before the Court will uphold it.

Here, the first four General Objections are meritless on their face. In each, Defendant states that it "objects to this Interrogatory to the extent that . . . ." The Court recently summarized its position on such objections as follows:

> This Court has on several occasions disapproved of the practice of asserting a general objection "to the extent" it may apply to particular requests for discovery. This Court has characterized these types of ob-

---

to address each objection in its motion to compel. *Id.* By doing so, the moving party brings the objection "into play" and places the burden on the objecting party to support its objection when its responds to the motion to compel. *Id.* If, however, the moving party fails to address a particular objection in its motion to compel, "the objecting party need not raise it, and the objection will stand." *Id.*

jections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such ostensible objections waived or [has] declined to consider them as objections.[5]

Thus, even though Plaintiff failed to address General Objections No. 1–4 in her Motion to Compel, those objections are meritless and will not be allowed to stand.

The remaining General Objection is Objection No. 5, which states: "Sprint objects to this Interrogatory on the grounds that it is overly broad, burdensome and harassing." Neither party addresses the burdensome and harassing General Objections in their briefs.[6] Accordingly, the Court must allow these objections to stand if they have any merit on their face. The Court, however, does not find that these objections have merit, as there is nothing facially harassing or burdensome about the interrogatories at issue. The Court, therefore, will not allow these General Objections to stand.

The Court will now turn to the specific objections and responses made by Defendant to First Interrogatory Nos. 4 and 5.

### B. Plaintiff's First Interrogatory No. 4

This interrogatory provides as follows:

The June 12, 2003 Letter states that "Sprint has consistently terminated executives found to have engaged in similar conduct with vendors." In the last five years, have you *not* terminated a Sprint executive who "engaged in similar conduct with vendors?" If so, identify:

a. The name and gender of the executive;

b. State the specific section of Sprint's Principles of Business Conduct the conduct violated.

The June 12, 2003 letter referred to in this interrogatory is a letter Defendant sent to the Equal Employment Opportunity Commission ("EEOC") responding to the allegations asserted by Plaintiff in her EEOC charge ("Defendant's EEOC Position Statement").

Defendant objected to this interrogatory on grounds that it is vague, ambiguous, and overly broad. Defendant went on to state, however, that "without waiving these objections ... [Defendant] has consistently terminated executives found to have engaged in improper conduct with vendors."

Before the Court analyzes Defendants' objections, the Court will address Defendants' representation that it intends to provide a "corrected" answer to this interrogatory. In its response to the Motion to Compel Defendant indicates that it erroneously answered that it has consistently terminated executives for engaging in "improper conduct with vendors." Defendant indicates that it plans to immediately serve a corrected response, restating its objections but stating that without waiving those objections, Defendant "has consistently terminated executives found to have engaged *in similar conduct.*"[7]

Regardless of how Defendant phrases this sentence, it is still an incomplete and nonresponsive answer. The interrogatory asks for a "yes" or "no" answer, and if the question is answered in the affirmative, Defendant is asked to provide additional information. Defendant's response, regardless of which terms it uses, does not fully respond to the questions asked.

The Court will now proceed to analyze the merits of Defendant's objections to this interrogatory.

#### 1. Overbreadth objection ·

Unless an interrogatory is overly broad on its face, the party resisting discovery has the burden to support its overbreadth objection.[8] This includes any objec-

---

**5.** *Id.* at 666–67 (internal quotations and citations omitted).

**6.** As noted, above, Defendant did reassert its overbreadth objection in response to First Interrogatory Nos. 4 and 5, and the parties have fully briefed that objection. The Court will therefore address that specific objection in its discussion below.

**7.** Def.'s Resp. to Pl.'s Mot. to Compel (doc. 71) at p. 3, n. 2 (emphasis added).

**8.** *Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 672 (D.Kan.2003); *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 686 (D.Kan.2000) (citations omitted).

tion to the temporal scope of the request.[9] The Court does not find this interrogatory overly broad on its face. It is limited to executives and to violations similar to those that Plaintiff allegedly committed. Moreover, it is limited in its temporal scope. It covers only a five-year time period, i.e., the five years preceding Defendant's response. Although the Complaint does not specify the time period during which the alleged discrimination took place, it does allege that Plaintiff's discriminatory termination occurred in October 2002. Thus, the interrogatory would extend to approximately three years before, and two years after, the claimed discriminatory termination. Discovery requests covering similar time periods have been upheld in employment discrimination cases as reasonable and not overly broad.[10] Furthermore, it is well established that the scope of discovery is particularly broad in employment discrimination cases[11] and is not to be "narrowly circumscribed."[12]

As the interrogatory is not overly broad on its face, Defendant has the burden to demonstrate it is overbroad. Defendant, however, does not explain why it contends it is overbroad. In fact, Defendant does not even address its overbreadth objection in its response to the Motion to Compel. Accordingly, the Court will overrule Defendant's overbreadth objection.

### 2. Vague and ambiguous objection

Although Defendant does not expressly identify the language in this interrogatory that it finds vague and ambiguous, the Court assumes from the arguments Defendant makes in its response to the Motion to Compel that it considers the terms "consistently terminated" and "similar conduct" to be vague and ambiguous.

The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.[13] A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories."[14]

The Court does not find that Defendant has met its burden to show how this interrogatory is vague or ambiguous. Plaintiff is simply asking whether, in the last five years, Defendant has ever failed to terminate an executive who engaged in conduct similar to the conduct for which Defendant asserts it terminated Plaintiff. The Court finds nothing vague or ambiguous about such an inquiry.

Furthermore, the interrogatory uses the very same very same language that Defendant used in its EEOC Position Statement. There, Defendant stated: "[Plaintiff] claims the decision to terminate her employment was based on her sex. She is wrong. *Sprint has consistently terminated executives found to have engaged in similar conduct with vendors.*"[15] The Court agrees with Plaintiff that it is disingenuous for Defendant to claim it does not understand this language when it is the very same language that Defendant used in its formal response to Plaintiff's EEOC charge.

---

**9.** *McCoo*, 192 F.R.D. at 686 (citing *Daneshvar v. Graphic Tech., Inc.*, No. 97–2304–JWL, 1998 WL 726091, at *1 (D.Kan. Oct. 9, 1998)).

**10.** *See, e.g., Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655–56 (D.Kan.2004) (allowing discovery into period two and one-half years prior to the alleged discrimination); *Garrett v. Sprint PCS*, No. 00–2583–KHV, 2002 WL 181364, at *3 (D.Kan. Jan.31, 2002) (allowing discovery into three-year period prior to the alleged discrimination to the present); *Equal Empl. Opportunity Comm'n v. Kansas City S. Ry.*, 195 F.R.D. 678, 680 (D.Kan.2000) (allowing discovery into four years prior to and one year after alleged discrimination); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D.Minn.1997) (allowing discovery into two-year period after termination).

**11.** *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995) (citing *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir.1991)).

**12.** *Id.* (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343–44 (10th Cir.1975)).

**13.** *McCoo*, 192 F.R.D. at 694 (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D.Kan.1996)).

**14.** *Id.*

**15.** Def.'s EEOC Position Statement, attached as Ex. 7 to Pl.'s Mot. to Compel (doc. 67) (emphasis added).

Finally, Defendant states in its response to the Motion to Compel that "[i]t is Sprint's belief and Sprint's position in this case that all executives 'found to have engaged in similar conduct with vendors,' have been terminated."[16] If Defendant is able to make such a representation in its brief, then it is clearly able to understand and answer this interrogatory. In light of the above, the Court overrules Defendant's vague and ambiguous objection to First Interrogatory No. 4.

To summarize, the Court overrules Defendant's objections to First Interrogatory No. 4 and finds Defendant's answer that it has "consistently terminated executives" to be non-responsive and incomplete. Accordingly, the Court will grant the Motion to Compel as to this interrogatory. Defendant shall serve, without objections, a full and complete amended answer to this interrogatory within *twenty (20) days* of the date of filing of this Order.

### C. Plaintiff's First Interrogatory No. 5

This interrogatory provides as follows:

The June 12, 2003 Letter states that "Sprint has consistently terminated executives found to have engaged in similar conduct with vendors." In the last five years, have you taken an adverse employment action *other than termination* against a Sprint executive who "engaged in similar conduct with vendors?" For each executive against whom an adverse employment action other than termination has been taken for "engag[ing] in similar conduct with vendors," state:

  a.  The name and gender of the executive;

  b.  The specific section of Sprint's Principles of Business Conduct the conduct violated.

  c.  The date on which the conduct occurred;

  d.  The adverse employment action taken.

Defendant asserted the same overly broad, vague, and ambiguous objections to this interrogatory that it made to First Interrogatory No. 4. It also made the same statement,

that, without waiving those objections, Defendant "has consistently terminated executives found to have engaged in improper conduct with vendors."

The parties raise arguments similar to those raised above with respect to First Interrogatory No. 4. For the same reasons set forth above, the Court overrules Defendant's objections to this interrogatory and finds Defendant's response that it has consistently terminated executives who have engaged in improper conduct with vendors (or similar conduct) to be incomplete and non-responsive. The Court therefore grants the Motion to Compel as to this interrogatory. Defendant shall serve, without objections, a full and complete amended answer to this interrogatory within *twenty (20) days* of the date of filing of this Order.

### III. Plaintiff's Fourth Interrogatory No. 8

The only interrogatory at issue in the Fourth Set of Plaintiff's interrogatories is No. 8, which asks Defendant to identify those executives who have been disciplined but not terminated for certain specified actions enumerated in subparts (a) through (e) of the interrogatory. For example, subpart (a) asks Defendant to identify executives who have been disciplined but not terminated for failing to act when the executive had knowledge that a subordinate had provided confidential bid information to a vendor. Subpart (b) asks Defendant to identify executives disciplined but not terminated for soliciting and/or encouraging vendor-paid gifts and entertainment.

Defendant objected to answering this interrogatory on the basis that it is overly broad and unduly burdensome. It also objected on the basis that Plaintiff had exceeded the maximum number of interrogatories allowed by the Scheduling Order. These objections were timely asserted with Defendant's responses, on August 8, 2004.[17] More than two weeks later, on August 26, 2004, defense counsel sent Plaintiff's counsel a letter and for the first time asserted a relevancy objection. The letter was sent after the

---

**16.** Def.'s Resp. to Pl.'s Mot. to Compel (doc. 71) at p. 3.

**17.** *See* Certificate of Service (doc. 63).

thirty-day deadline for responding to the interrogatories had passed.

### 1. Objection that Plaintiff has exceeded the maximum number of interrogatories

Defendant objected to Plaintiff's Fourth Interrogatory No. 8 and all other interrogatories in the Fourth Set, except for Fourth Interrogatory No. 1, on the basis that Plaintiff had exceeded the maximum of thirty-five interrogatories, the limit set forth in the Scheduling Order. During the parties' attempts to resolve this discovery dispute, Plaintiff agreed to withdraw Fourth Interrogatory Nos. 9, 10, and 12. She also agreed to withdraw subpart (a) to Fourth Interrogatory 12 and all subparts to Fourth Interrogatory No. 13. In turn, Defendant agreed to answer Fourth Interrogatory Nos. 2–7, subpart (b) to Fourth Interrogatory No. 11, and Interrogatory No. 13 (as revised without its subparts). Defendant, however, still objects to responding to Fourth Interrogatory No. 8 on the basis that Plaintiff has exceeded the maximum number allowed. Thus, the Court must decide whether the total number of interrogatories in the First, Second, and Third Sets, in addition to Fourth Interrogatory Nos. 1–7, 11(b), and 13 (as revised, with no subparts), exceed s the maximum, such that Defendant should be relieved of the obligation to answer Fourth Interrogatory No. 8.

Paragraph II.d. the Scheduling Order provides that each party may not propound more than thirty-five interrogatories, inclusive of subparts, to any other party.[18] In addition, Federal Rule of Civil Procedure 33(a), by its express terms, makes it clear that each interrogatory served, including any "discrete subparts," is to be counted against the numerical limit of interrogatories to be served.[19] Rule 33(a) does not define the term "discrete subparts," and courts have struggled to interpret the term's meaning.

In *Williams v. Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas,*[20] this Court addressed how the number of interrogatories is calculated, as follows:

> Interrogatories often contain subparts. Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.[21]

The Court noted that the Advisory Committee had addressed this issue in amending Rule 33 and had provided the following guidance as to when subparts should and should not count as separate interrogatories:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.[22]

Finally, the Court observed that an interrogatory containing subparts directed at eliciting details concerning a "common theme" should generally be considered a single question.[23] On the other hand, an interrogatory

---

18. *See* Scheduling Order (doc. 13), ¶ II.c.

19. Fed.R.Civ.P. 33(a) ("Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served.")

20. 192 F.R.D. 698, 701 (D.Kan.2000).

21. *Id.*

22. *Id.* (quoting Advisory Committee Note, 146 F.R.D. 401, 675–76 (Fed.1993)).

23. *Id.* (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure,* § 2168.1 at 261 (2d ed.1994)).

which contains subparts that inquire into discrete areas should, in most cases, be counted as more than one interrogatory.[24]

■ With these standards in mind, the Court must determine whether the interrogatories in dispute exceed the numerical limit. The Court finds that, with the exception of Fourth Interrogatory No. 7, the subparts of the interrogatories at issue all relate to a common theme. The subparts in Fourth Interrogatory No. 7 do not relate to a common theme, and should be considered three separate interrogatories. Thus, without taking into consideration Fourth Interrogatory No. 8, the Court finds that Plaintiff has propounded only nineteen interrogatories. Turning to the disputed Fourth Interrogatory No. 8, the Court finds that it contains five subparts that are not related to a common theme, and that it should therefore be counted as five separate interrogatories. This brings the total of interrogatories to twenty-four, well within the maximum number of thirty-five. The Court therefore overrules this objection to Fourth Interrogatory No. 8.

### 2. Relevancy objection

As noted above, Defendant did not assert its relevancy objection with its initial responses and waited until several weeks after the deadline for responding to assert the objection. Plaintiff argues that Defendant has waived the objection by not timely asserting it. Defendant concedes that its relevancy objection was not asserted until after the deadline, but argues that it was not required to timely assert the objection because it had already asserted its objection that Plaintiff had exceeded the number of interrogatories allowed. Defendant argues that it was not required to provide all of its objections "up front."

■ The Court disagrees with Defendant, and holds that Defendant has waived its relevancy objection. It is well settled that the failure to timely assert an objection to an interrogatory results in waiver of the objection. Federal Rule of Civil Procedure

33(b)(1) provides that "[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections, if any, within 30 days after the service of the interrogatories."[25] Subsection (b)(4) of the Rule further provides that "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."[26] The Rule makes no exception for untimely objections merely because a timely objection to the number of interrogatories has been lodged. Accordingly, the Court deems Defendant's relevancy objection waived, and therefore overrules it.

### 3. Overbreadth objection

■ Defendant argues that Fourth Interrogatory No. 8 is overbroad because it seeks identification of *all* Sprint executives in every department and for an unlimited time period. In her reply brief, Plaintiff agrees to limit the interrogatory to written discipline of Sprint PCS employees in "grade E16 through the president" and to the time period 1998 to the present. Defendant does not demonstrate how the interrogatory—as narrowed by Plaintiff—continues to be overly broad. Plaintiff's more narrowly tailored version of the interrogatory appears reasonable on its face, and Defendant fails to meet its burden to show how the interrogatory is objectionable.[27] The Court will therefore overrule Defendant's overbreadth objection.

### 4. Undue burden objection

In support of its undue burden objection, Defendant asserts that it does not organize its investigative files according to the specific conduct identified in subparts (a) through (e) of this interrogatory or according to the rank of the employee being investigated. Defendant contends that in order to answer this interrogatory it would be forced "to spend significant time manually culling through all its investigative and Human Resource files, which number in the thousands, to identify

---

**24.** *Id.* (quoting Wright, Miller & Marcus, *supra*).

**25.** Fed.R.Civ.P. 33(b)(3).

**26.** Fed.R.Civ.P. 33(b)(4).

**27.** *See Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 672 (D.Kan.2003) (unless interrogatory is overly broad on its face, objecting party has the burden to support its overbreadth objection).

first any individuals who had been investigated for each alleged category of conduct and then to spend more time reviewing separate personnel files in another department to determine whether the individual was a Sprint executive and, if so, the outcome of the investigation." [28]

▮ In ruling on an undue burden objection, the Court must keep in mind that discovery should be · allowed unless the claimed hardship is unreasonable in the light of the benefits to be secured from the discovery.[29] As the party asserting this objection, Defendant has the burden to show not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.[30] This burden typically imposes an obligation on the objecting party to provide an affidavit or other evidentiary proof of the time or expense involved.[31]

Here, Defendant submits no affidavit or evidentiary proof of the burden involved in answering this interrogatory. Nor does it provide an estimate of the time that it would take Defendant to review its investigative and Human Resources files; Defendant merely alleges that it would be required to spend "significant time" reviewing the files. The Court cannot find that Defendant has met its burden of showing how responding to this interrogatory would cause undue burden. The Court therefore overrules Defendant's undue burden objection.

In light of the above, the Court grants the Motion to Compel with respect to Fourth Interrogatory No. 8, as narrowed by Plaintiff. As narrowed, it shall apply only to written discipline of Sprint PCS employees in "grade E16 through the president" and to the time period 1998 to the present. Defendant shall serve, without objections, a full

and complete amended answer to this narrowed version of the interrogatory within *twenty (20) days* of the date of filing of this Order.

## IV.   Sanctions

The Court will now consider the issues of sanctions. Although Plaintiff does not request sanctions in her motion, the Court finds that an award might be appropriate here, as the Court is granting the Motion to Compel.

Federal Rule of Civil Procedure 37(a)(4) governs the imposition of sanctions in connection with motions to compel. Subsection (a)(4)(A) provides that when a motion to compel is granted, "the court *shall*, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that ... the opposing party's ... response or objection was substantially justified, or that other circumstances make an award of expenses unjust." [32]

▮ The Court has granted the Motion to Compel as to First Interrogatory Nos. 4 and 5. It has also granted the Motion as to Fourth Interrogatory No. 8, taking into account Plaintiff's agreement to narrow the interrogatory. Thus, the Court finds that an award of sanctions pursuant to Rule 34(a)(4)(A) may be appropriate here. Before the Court may make any such award, however, the non-moving party must be afforded the "opportunity to be heard." [33] An actual hearing is not necessary, however, and the Court may consider the issue of sanctions "on written submissions." [34] The "written

---

28.   Def.'s Resp. to Pl.'s Mot. to Compel (doc. 71) at p. 6.

29.   *Hammond,* 216 F.R.D. at 674; *Snowden by and through Victor v. Connaught Labs., Ltd.,* 137 F.R.D. 325, 332–33 (D.Kan.1991).

30.   *Hammond,* 216 F.R.D. at 674.

31.   *Waddell & Reed Fin., Inc. v. Torchmark Corp.,* 222 F.R.D. 450, 454 (D.Kan.2004); *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 653 (D.Kan.2004).

32.   Fed.R.Civ.P. 37(a)(4)(A) (emphasis added).

33.   *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 697 (D.Kan.2000) (citing Fed.R.Civ.P. 37(a)(4)); *Fears v. Wal-Mart Stores, Inc.,* No. 99–2515–JWL, 2000 WL 1679418, at *6 (D.Kan. Oct.13, 2000).

34.   *Fears,* 2000 WL 1679418 at *6 (citing Advisory Committee Note to the 1993 Amendments to Rule 37(a)(4)).

 

submission" requirement is met where the moving party requests sanctions in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response.[35]

Here, Plaintiff did not request sanctions in her motion. Thus, Defendant has not been given sufficient "opportunity to be heard," and the Court will decline to impose sanctions at this time. To satisfy the "written submissions" rule, the Court will direct Defendant and/or its counsel to show cause, in writing, within *thirty (30) days* of the date of filing of this Memorandum and Order, why the Court should not require either or both of them [36] to pay the reasonable expenses and attorney fees incurred by Plaintiff in making the Motion to Compel. Plaintiff shall have *eleven (11) days* thereafter to file a response thereto, if she so chooses. In the event the Court determines that sanctions should be imposed, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Plaintiff has incurred, and for the filing of any related briefs.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel (doc. 67) with respect to Plaintiff's Interrogatories is granted as set forth herein.

IT IS FURTHER ORDERED that Defendant shall, within *twenty (20) days* of the date of this Memorandum and Order, serve amended responses to Plaintiff's interrogatories as set forth herein.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel (doc. 67) is moot with respect to issues relating to Defendant's Amended Privilege Log.

IT IS FURTHER ORDERED that Defendant and/or its counsel shall show cause, in writing, within *thirty (30) days* of the date of filing of this Memorandum and Order, why the Court should not require either or both of them to pay the reasonable expenses and

attorney fees incurred by Plaintiff in making the Motion to Compel.

IT IS SO ORDERED.

---

35. *Id.*

36. To the extent possible, sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct. *McCoo*, 192 F.R.D. at 697. The sanctioning of a party, as opposed to the party's counsel, "requires specific findings that the party was aware of the wrongdoing." *Id.* At present, the Court has no evi-

dence that Defendant itself was responsible for the objections and responses at issue. However, if·Defendant or its attorneys wish to provide the Court with any information in this regard, Defendant and/or its counsel may do so in the pleading(s) provided to the Court pursuant to the briefing schedule set forth herein. The Court will defer ruling on this issue until it has received the parties' briefs.