**In re Justin Wayne SPOONEMORE, Cassandra Kathaleen Spoonemore, Debtors.**

No. 05–17380.

United States Bankruptcy Court, D. Kansas.

June 26, 2007.

Paul W. Joslin, Wichita, KS, for Debtors.

## ORDER ASSESSING SANCTIONS AGAINST CREDITOR CIT GROUP AND ITS COUNSEL ON THE TRUSTEE'S FIRST AND SECOND MOTIONS TO COMPEL

ROBERT E. NUGENT, Chief Bankruptcy Judge.

The chapter 7 trustee Linda S. Parks moves for sanctions in connection with two motions to compel discovery from creditor CIT Group filed in this contested matter. The Court conducted a hearing on the first motion to compel on March 8, 2007 and on the second motion to compel on May 10, 2007. The Court granted both motions to compel, reserving the issue of sanctions. The Court held an evidentiary hearing on the issue of sanctions on May 23, 2007. The Trustee appeared by Gaye Tibbets of Hite, Fanning & Honeyman, LLP, Wichita, Kansas. Creditor CIT Group appeared by Phyllis Schauffler of Martin, Leigh, Laws & Fritzlen, Kansas City, Missouri. The Court received into evidence Trustee's exhibits 1 through 18 and the testimony of Linda Parks regarding the fees incurred by the Trustee related to these discovery disputes. The Court is now prepared to rule.

### Factual Background

Debtors filed their chapter 7 petition on October 10, 2005. In their statement of intentions, debtors did not claim their home exempt and indicated that they would surrender it. Creditor The CIT Group/Consumer Finance Inc. ("CIT") purports to be the holder of one, and possibly two, mortgages granted by debtors on their home. CIT filed motions for relief from the automatic stay so that it could foreclose these mortgages. Because the property is not exempt, the Trustee objected, asserting the estate's interest in the property and requesting to be included as an *in rem* party in any state court

mortgage foreclosure proceeding. On December 30, 2005 the Trustee and CIT entered into an agreed order granting stay relief ("Agreed Order"); in that Agreed Order, CIT was ordered to name the Trustee as an *in rem* party to the state court foreclosure action against the property.[1]

After obtaining the Agreed Order, CIT, represented by Martin, Leigh, Laws & Fritzlen ("MLLF"), its counsel here, commenced a foreclosure case in state court, but failed to name the Trustee as a party in the foreclosure action.[2] CIT took judgment in the state court case but then obtained an order vacating the judgment and dismissing the case after it took a deed in lieu from the debtors. None of this occurred with either the Trustee's knowledge or consent. CIT then seized possession and control of the property and prevented the Trustee's tenant from entering. When the Trustee discovered that CIT had taken possession of the property, she filed a motion for turnover and sanctions against CIT, alleging that CIT willfully violated the automatic stay and converted property of the estate ("Turnover Motion").[3] The Turnover Motion was set over to a scheduling conference at which time the Court established a deadline of January 26, 2007 for the completion of discovery. Since that time, the Trustee and CIT have been embroiled in contentious discovery disputes concerning the Trustee's efforts to ascertain how, why, and by whom CIT's decision to omit the Trustee from the foreclosure and seize the property was taken. A detailed account of the discovery history is necessary to fully appreciate CIT's efforts to evade discovery and stymie the prosecution of the Turnover Motion over the course of the past six months.

### The Discovery Disputes

The Trustee served her first set of interrogatories and requests for production of documents on CIT on or about November 15, 2006.[4] The Court notes that the information sought in the Trustee's ten (10) interrogatories was clearly relevant to the subject matter of the Trustee's Turnover Motion and discoverable under Fed. R.Civ.P. 26(b)(1). CIT failed to timely respond to this discovery and the Trustee made several efforts to confer with CIT's counsel regarding the outstanding discovery. CIT's counsel represented that the discovery requests "fell between the cracks" and she was unaware of the discovery requests until the Trustee brought the outstanding discovery to her attention in early January of 2007. She requested an additional ten days to answer the discovery to which the Trustee agreed.[5]

CIT did not provide discovery responses as promised and on January 29, 2007, the Trustee filed her first motion to compel.[6] In CIT's response to the motion to compel, it became apparent that at the time CIT requested an additional ten days to answer the discovery (January 17, 2007), CIT counsel had not yet reviewed the discovery

---

1. Dkt. 15.

2. CIT's counsel represented that another entity called Foreclosure Management Company ("FMC") acts as CIT's foreclosure agent. The Court addressed the murky relationships between MLLF and FMC and between FMC and CIT in previous orders. *See* Dkt. 120 (Order on Documents Claimed Privileged).

3. Dkt. 28.

4. Dkt. 43.

5. On January 17, 2007 CIT's counsel sought additional time to January 27, 2007 to answer the discovery but because this was beyond the discovery cutoff date, the Trustee agreed only to extend the time to January 26, 2007.

6. Dkt. 46.

requests.[7] Nevertheless, CIT attached to its compel response a copy of its response to the Trustee's interrogatories and requests for production. Those discovery responses consist largely of blanket objections on the grounds that the requests are "overbroad," "unduly burdensome," and that "CIT has numerous employees and agents." CIT did not move for a protective order.[8] In several other discovery responses CIT asserted the attorney-client privilege and attorney work product doctrine, but did not provide a privilege log.[9] Moreover, CIT further resisted the Trustee's discovery and took the position in its compel response that discovery should be suspended and hearing on the Turnover Motion be bifurcated, until CIT's liability was established:

> 12. CIT sincerely believes this matter can and should be resolved without protracted discovery and litigation. There is no need to conduct an evidentiary hearing on the Trustee's Motion for Turnover. CIT believes that the factual basis for the Trustee's Motion for Turnover is not in dispute. CIT does deny that it was in violation of the automatic stay, willful or otherwise, and that it converted property of the estate, but these are legal issues which can and should be submitted to the Court on motions for summary judgment or argument of the Trustee's Motion and CIT's Response....

> 15. CIT requests this Court to suspend further discovery and stay any need for

CIT to respond to the Discovery Request, while the Court rules on the underlying matter. CIT submits that since the parties agree to the facts, this matter can be submitted on cross-motions for summary judgment or by oral argument. Then, if the Court rules for the Trustee, the Court can take up the Trustee's Discovery Request again, and determine what additional evidence it needs.[10]

Instead of supplying answers to the interrogatories, CIT filed a motion to suspend discovery and bifurcate hearing contemporaneous with its January 31, 2007 response to the Trustee's motion to compel.[11] The motions to suspend and bifurcate came well after the Court's initial scheduling conference at which CIT's counsel did not appear, ostensibly because the parties felt they could agree on a discovery schedule. No mention was made at that conference of a need or desire to suspend or bifurcate the process. CIT followed those motions on March 5, 2007 with two more: a motion for summary judgment on the Trustee's Turnover Motion and a motion to dismiss the Turnover Motion for lack of standing.[12] All the while, CIT remained firm on its blanket objections and privileges asserted to the Trustee's discovery requests.

The Court held a hearing on the Trustee's first motion to compel on March 8, 2007, at which time the court directed that certain interrogatories be answered and that certain document production be completed by April 12. As for CIT's objec-

---

7. Dkt. 48, ¶ 10. "After reviewing the Discovery Requests, counsel for CIT became aware that CIT could not reasonably respond within ten days for reasons discussed below ..."

8. *See* Fed.R.Civ.P. 26(c)

9. *See* Fed.R.Civ.P. 26(b)(5)(A).

10. *See* Dkt. 48

11. Dkt. 49.

12. Dkt. 63, 64 and 65. Readers of this Order are referred to this Court's order denying CIT's motion for summary judgment (Dkt. 107, entered May 21, 2007) and the factual findings made therein and this Court's order denying CIT's motion to dismiss (Dkt. 108, entered May 21, 2007).

tions that the requests were unduly burdensome, the Court ordered that in the absence of answering the request, CIT was to provide an explanation of how or why the requests were unduly burdensome. With regard to any claimed privilege the Court ordered CIT to provide a privilege log as provided by Fed.R.Civ.P. 26(b)(5)(A). The Court denied CIT's motions to suspend discovery and bifurcate the Turnover Motion. The Court's rulings on the Trustee's first motion to compel were journalized in an order entered March 20, 2007.[13]

Thereafter, CIT's counsel provided some responsive information, but discovery stalled when CIT failed to produce its billings statements as previously ordered and counsel produced a privilege log that was wholly non-compliant with either Rule 26(b)(5)(A) or the decisions in this District that interpret it. Specifically, CIT generated a privilege log identifying over 100 documents for which it claimed attorney-client privilege and/or work product, but did not identify the parties to the communications or provide a description of the communications sufficient to enable the Trustee or the Court to determine the application of the claimed privilege.

The Trustee filed her second motion to compel on May 4, 2007, complaining about the adequacy of the privilege log and the nonproduction of billing records that were previously ordered to be produced.[14] The Court held a hearing on the second motion on May 10, 2007, at which time the Court directed that CIT had until 5:00 p.m. that day to produce all its billing statements concerning this matter and until May 21 to refine the privilege log to comply with Rule 26(b)(5)(A) and submit the documents claimed privileged for *in camera* review.[15] Further, the Court set the Trustee's request for sanctions in conjunction with her motions to compel over to hearing on May 23. The Court notes that the discovery remaining outstanding at the time of the May hearing was issued in November of 2006 and, even after six months, still has not been completely answered. The unavailability of the documents has hindered the Trustee's ability to proceed with depositions of CIT personnel and delayed discovery, requiring extensions of the discovery deadlines, not to mention this Court's repeated need to intervene.[16]

CIT's counsel timely submitted the documents for *in camera* review. By this time, CIT's counsel had pared down the number of documents for which a privilege was asserted to 23 from over 100. The Court reviewed them *in camera* and issued its order on their discoverability. The Court found that CIT improperly claimed 10 of the 23 communications or e-mails protected by the attorney-client privilege or attorney work product doctrine and assessed sanctions against CIT of $1,000.[17]

### The Sanctions Hearing

On May 23, 2007, the Court convened the hearing on the Trustee's request for sanctions with regard to her two motions to compel. The Trustee's attorney submitted 18 exhibits in support of her request for sanctions and presented the testimony of the Trustee regarding the fees incurred in these discovery disputes. CIT presented no evidence, briefly cross-examined the

---

13. Dkt. 76.

14. Dkt. 92.

15. Dkt. 102.

16. Dkt. 60 and 76 (extending deadline for completion of discovery to May 10, 2007); Dkt. 96 and 110 (extending discovery deadline to July 2, 2007).

17. Dkt. 120.

Trustee, and presented the argument of its counsel. CIT's counsel, Ms. Schauffler, stipulated to the admission of the Trustee's exhibits which contained mostly documents to which CIT had previously claimed the attorney-client privilege, but relented after the May 10 hearing and order. At the close of the hearing, the Court directed the Trustee to submit her final billing of attorney fees concerning these discovery disputes within ten days and gave CIT ten days in which to respond or challenge the claimed fees. The Trustee submitted her statements to the Court on June 1, highlighting those entries pertaining to these discovery matters. The Trustee seeks attorney fees of $11,027.[18] The Trustee billed her time in this matter at $200 an hour and her counsel, Ms. Tibbets, billed her time at $185 an hour. CIT has not filed a response to the billings submitted by the Trustee.

The Trustee's counsel outlined the series of events as described above, now well-known to the Court, concerning the discovery issues. The Court has reviewed CIT's initial objections, most of which are predicated (1) on CIT's large size rendering it incapable of fully responding to the discovery, or (2) the alleged overbreadth of the requests. Unfortunately, these initial objections and responses were both late and inadequate, suggesting that CIT's counsel simply ignored the discovery until pressed by Trustee's counsel, responded without careful review of what was being sought, and did so without consultation with her client CIT or due regard for the discovery rules. Ms. Schauffler attributes fault for the lateness of the responses and objection with staffing problems at MLLF, but ultimately accepted responsibility for the failure to timely answer the discovery. The Court attributes the content of the interrogatory responses and objections and the inadequate privilege log to MLLF and Ms. Schauffler, as well as CIT. Her comments on May 23 were hauntingly similar to those she made to the Court on March 8 and again on May 10. Each time she indicated remorse and a desire to respond and cooperate, but stated that she had been prevented from doing so, whether at the instance of her superiors at MLLF or her client, or as a result of operational issues at MLLF. The Court is frankly puzzled by some of her statements ("... maybe I chose the wrong law firm to work for"), but accepts at face value her concession that MLLF and CIT have not complied with their discovery duties under Rules 26, 33, 34 and 37.

Among the exhibits introduced by the Trustee at the hearing were documents initially claimed privileged by CIT, but subsequently retracted from the privilege log and produced to the Trustee after the May 10 hearing only after the Court urged Ms. Schauffler to carefully consider the applicability of the privilege before submitting the document for *in camera* review. A sampling of those documents demonstrates just how frivolous CIT's and Ms. Schauffler's initial assertion of the privilege claims was. As shown below, the descriptions in the privilege log were blatantly false and misleading.

In Exhibit 1, CIT initially claimed privileged a January 31, 2006 communication described as a "[f]oreclosure referral from Linda Buckley at FMC [Foreclosure Management Company] to Tracy Thayer at MLLF work product and attorney client privilege—discussion of pending foreclosure matters." Exhibit 3 reflects the actual communication and the documents pro-

---

**18.** At the hearing, the Trustee testified that the attorney fees incurred on the discovery matters totaled $8,953. It appears this figure did not include attorney fees incurred in preparation for and participation in the sanctions hearing on May 23.

duced to the Trustee. As it turns out, Exhibit 3 was simply the referral of the Spoonemore matter to MLLF to initiate foreclosure and transmittal of the foreclosure file from FMC to MLLF. Other than the attorney referral transmittal cover sheet, the balance of the documents consist of the loan file or foreclosure file. No foreclosure had been commenced against the debtors at this point and the documents contain no "discussion of pending foreclosure matters."

Exhibits 4 and 6 are similar. In Exhibit 4, CIT initially claimed privileged a November 30, 2005 communication described as a "Bankruptcy Referral from Rosemary Padilla at Foreclosure Management Company ("FMC") to Martin, Leigh, Laws & Fritzlen, PC ("MLLF")—work product and attorney client privilege—discussion of pending bankruptcy matters." Exhibit 6, the documents ultimately withdrawn from the privilege log and produced to the Trustee, indicate that this was simply the referral of the Spoonemore matter to MLLF with instructions to obtain stay relief in the Spoonemore's bankruptcy. Again, the bulk of Exhibit 6 consists of loan documents or loan file information with a transmittal cover sheet addressed to MLLF. The documents contain no discussions of bankruptcy matters.

Exhibit 10 identifies two e-mails in June 2006 (prior to the Trustee's Turnover Motion) from Tracy Thayer, a paralegal at MLLF to Bryan Cardwell at FMC for which work product and attorney client privilege were claimed, indicating "discussion of pending litigation." Exhibit 12 consists of the subject e-mails that were initially withheld from production. This exhibit reveals that Thayer was simply conveying to FMC the fact that MLLF had been contacted by the Trustee and her inquiry about the deed in lieu given by the debtors. There were no "discussions" and there was no "pending litigation" between the Trustee and CIT at this time. Thayer's e-mail consists of nothing more than communicating events that had transpired.

The Trustee seeks as sanctions in connection with her motions to compel the attorney fees she incurred in enforcing CIT's discovery obligations and entry of default judgment against CIT in this contested matter—the Turnover Motion. These sanctions are sought under Fed. R.Civ.P. 37.

### Analysis

The Trustee's request for sanctions made with her first motion to compel, which sought an order compelling CIT to answer her first discovery requests, falls under Rule 37(a)(4)(A). Rule 37(a)(4)(A) makes an award of attorney fees mandatory unless CIT's nondisclosure, response, or objection was substantially justified. An evasive or incomplete answer or response is treated as a failure to answer or respond for purposes of a motion to compel.[19] Rule 37(a)(4)(A) provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, *the court shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees,* unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially

---

**19.** Fed.R.Civ.P. 37(a)(3).

justified, or that other circumstances make an award of expenses unjust. (Emphasis added.).

■ Rule 37(b)(2) governs sanctions when the party has not complied with an order compelling disclosure issued under Rule 37(a)(2)(B). The Trustee's second motion to compel was directed at CIT failure to produce its billing records as ordered at the March 8 hearing and to furnish an adequate privilege log as ordered at the hearing on the first motion to compel. Rule 37(b)(2) authorizes a court to assess attorney fees as sanctions, as well as others, in this situation. It provides:

> If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ...
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party ...
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

In addition, the Court believes sanctions are appropriate under Rule 26(g)(3) in this case. That provision states:

> If without substantial justification a certification is made in violation of the rule [Rule 26(g)(2) ], the court, upon motion

or *upon its own initiative,* shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee. (Emphasis added.).

Rule 26(g)(2), in turn, requires that:

> Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record ... The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, *formed after a reasonable inquiry,* the request, response, or objection is: (A) consistent with these rules and warranted by existing law ... (B) not interposed for any improper purpose, such as to ... cause unreasonable delay or needless increase in the cost of litigation ...

In this Court's view, both CIT's initial objections to the Trustee's interrogatories and the deficient privilege log violate Rule 26(g)(2) and warrant the imposition of sanctions. The Court concludes that these discovery responses did not meet the minimum standards required by Rule 26(g)(2).

■ Armed with this authority to assess sanctions, as it may be *required* to do, the Court evaluates CIT's and its counsel's conduct in discovery.

Martin, Leigh, Laws & Fritzlen ("MLLF") represents CIT in this matter. In its practice, the firm represents numerous residential mortgage creditors in bankruptcy proceedings and foreclosures. MLLF appears frequently before the bankruptcy courts in this District and is well acquainted with the process for ob-

taining relief from the automatic stay on behalf of its creditor clients. Ms. Schauffler was admitted to the Missouri bar in 1990. She is admitted to practice before federal courts in Missouri and Kansas. Ms. Schauffler enjoys an AV rating from Martindale–Hubbell Law Directory where her practice areas are listed as civil litigation and creditor rights. Ms. Schauffler has been associated with MLLF for one year, having joined the firm as an associate in the spring of 2006. Ms. Schauffler appeared alone at the May 23 sanctions hearing. The Court does not expect discovery misconduct of this sort from a firm like MLLF or from a lawyer with Ms. Schauffler's credentials.

By the time of the sanctions hearing on May 23, Ms. Schauffler had conceded her mishandling of the discovery in this matter. That concession is perhaps aptly summarized by Ms. Schauffler's opening comments at the May 23 hearing:

> When I was preparing for today I thought I'd make a list of the things that our firm have [sic] done wrong, but I have such an extensive list I thought maybe I could make a list of the things our firm has done right, and I was hesitant to really find much we had done right.[20]

That is an understatement. CIT and Ms. Schauffler's actions evidence either an unlikely lack of understanding of the Federal Rules of Civil Procedure as they apply in this matter[21] and/or a complete disregard for them, not to mention the Court's orders, and their discovery obligations. This is unacceptable. The Court is satisfied that the Trustee met her obligation to confer with CIT's counsel and attempted to resolve the discovery matters before seeking the Court's intervention. The Court enumerates CIT and its counsel's failings with regard to the discovery in this matter.

### 1. No Discovery Responses

The Trustee's initial discovery requests were served November 15, 2006. CIT did not timely answer the interrogatories or the requests for production of documents within thirty (30) days nor seek an extension of time to answer from the Trustee before the thirty day period expired.[22] Ms. Schauffler professes that she never received the Trustee's discovery requests and was unaware of them until contacted by the Trustee in early January, 2007. She attributed this failure to a communications breakdown within MLLF. The Court notes that the Trustee filed a notice of service of the discovery requests and that notice was electronically mailed to Steven M. Leigh and four other individuals affiliated with MLLF.[23]

█ By failing to timely respond to the discovery requests, CIT technically waived any objections to the requests.[24]

### 2. Not Providing Discovery Responses as Promised

Even when CIT finally contacted the Trustee on January 17, 2007 concerning the status of this discovery, Ms. Schauffler belatedly sought an additional ten (10) days, to January 27, 2007, to provide dis-

---

**20.** Dkt. 114, Tr. at p. 14, l. 1–4.

**21.** See Fed. R. Bankr.P. 9014(c).

**22.** Fed.R.Civ.P. 33(b), 34(b), 29.

**23.** Dkt. 43.

**24.** Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658 (D.Kan.2004) (failure to timely assert an objection to an interrogatory results in waiver of the objection); Fed.R.Civ.P. 33(b)(4).

covery responses.[25] The Trustee could only agree to extend the time for CIT's discovery responses to January 26, 2007, because that was the court-ordered discovery deadline.[26]

CIT's discovery responses were not forthcoming on January 26 or 27. According to Ms. Schauffler, she realized *after reviewing the discovery requests* that CIT would be unable to provide the discovery responses within the requested additional time. This tells the Court that Ms. Schauffler had not reviewed the discovery requests at the time she made the request of the Trustee for additional time, nearly two months after the requests were served. Ms. Schauffler managed to file "responses" to the discovery requests on January 29, the same day that the Trustee filed her first motion to compel.

### 3. *Inadequacy of CIT's Initial Discovery Responses*

According to Ms. Schauffler, her initial responses to the Trustee's discovery requests were made at the direction of FMC and CIT and were reviewed by the senior partner at MLLF.

THE COURT: My question is what led you to make those initial responses? What inquiry did you make? What— [who] do [sic] did you consult?

MS. SCHAUFFLER: I talked to my contact at Foreclosure Management Company, who talked to a contact at CIT, and our discussions were that they did not want to provide this information . . .

MS. SCHAUFFLER: Well, but their— our discussions were that they thought we had a good faith basis for making the objections that we made.

THE COURT: So your initial objections were based upon, essentially, the direction of the agent of your client?

MS SCHAUFFLER: My—yes. My— well, after discussions that the agent had with CIT. And I also had discussions about those answers—the senior partner at Martin, Leigh, Laws and Fritzlen reviewed those answers as well.[27]

The Court has likewise reviewed the Trustee's ten numbered discovery requests and CIT's responses. The Court concludes that the information sought by the Trustee is patently reasonable and relevant to the Trustee's Turnover Motion. CIT asserted blanket objections to 7 of the 10 requests. Those objections are deficient and discussed below.

### a. Frivolous Objections

To the Trustee's request that CIT produce any policy of insurance that may cover the Trustee's claims, Ms. Schauffler lodged the following objection:

CIT objects on the grounds that the question is overbroad and vague. CIT is defined as the entity that "filed its Response in this case and all of its parents, subsidiaries, successors, sister companies, predecessors and agents, employees or representatives." This definition could include hundreds of thousands of entities, including attorneys, agents and employees.[28]

There is nothing vague or overbroad about a request for an insurance policy that may apply to a claim.[29] Indeed, this is one of

---

**25.** The Court notes that the Trustee sent a letter dated January 5, 2007 to Ms. Schauffler, accompanied by the discovery requests in question. Ms. Schauffler apparently waited to January 17 to respond to the Trustee.

**26.** *See* Fed.R.Civ.P. 29.

**27.** Dkt. 114, Tr. at p. 19, l. 10–22.

**28.** Dkt. 48, Ex. B, Request No. 7.

**29.** *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658 (D.Kan.2004) (party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity)

the basic items to be disclosed early on in civil litigation in federal court, without awaiting a specific request.[30] CIT could easily have disclosed whether the unit holding or servicing these particular mortgages had insurance for this claim and made its overbreadth objection pertaining to the balance of the CIT entities, but it did not. It is very clear to this Court that the Trustee was directing the request to the same CIT party, however named, that filed the response to the Trustee's Turnover Motion. If CIT's counsel doesn't know who that is and whether that entity is insured, who would?

### b. Blanket or Boilerplate Objections

To several of the Trustee's discovery requests, CIT objected on the grounds that the request or interrogatory was "overbroad and unduly burdensome."[31] CIT cited to the manner in which the Trustee defined CIT, encompassing "the entity that 'filed its Response in this case and all of its parents, subsidiaries, successors, sister companies, predecessors and agents, employees or representatives.' This definition could include hundreds of thousands of entities, including attorneys, agents and employees."

Such blanket objections are improper without CIT explaining how the request is overbroad and unduly burdensome.[32] CIT was obligated to provide an affidavit or other evidentiary proof of the time or expense involved in providing the

information.[33] It did neither at the hearing on the Trustee's first motion to compel. CIT fails to describe what would be entailed to fully answer the interrogatory or produce the responsive documents. It fails to identify how much time it would take to comply, the number of sources CIT would have to contact to ascertain the information, or even the number of documents that are potentially responsive to the requests.

Nor did CIT seek a protective order from the Court to protect it from this alleged "unduly burdensome" discovery.[34] In fact, CIT's counsel did not even confer or attempt to confer with the Trustee before asserting the undue burden and overbreadth objections.

### c. Blanket Privilege Objections

CIT lodged attorney client privilege and work product objections to the Trustee's Request No. 4 and withheld the information sought thereby without providing a privilege log. Fed.R.Civ.P. 26(b)(5)(A) states that the "party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." These blanket privilege objections are improper and insufficient to establish a claim of privilege.[35]

---

30. *See* Fed.R.Civ.P. 26(a)(1)(D).

31. Dkt. 48, Ex. B, Request or Interrogatory Nos. 1, 2, 3, 8, and 9.

32. *See Swackhammer v. Sprint Corp. PCS,* 225 F.R.D. 658 (D.Kan.2004) (Unless an interrogatory is overly broad on its face, the party resisting discovery has the burden to support its overbreadth objection, including any objection to the temporal scope of the request.)

33. *Id.*

34. *See* Fed.R.Civ.P. 26(c).

35. *See McCoo v. Denny's Inc.,* 192 F.R.D. 675, 680–81 (D.Kan.2000); *Jones v. Boeing Co.,* 163 F.R.D. 15 (D.Kan.1995).

#### 4. *Inadequate Privilege Log*

Once the Court ordered CIT to provide a privilege log, CIT claimed over 100 documents were protected by the attorney-client privilege or work product. However, the privilege log did not comply with Rule 26(b)(5)(A) because in many instances it could not be determined whether the communications withheld were between the client (CIT and CIT personnel) and MLLF. Many of the communications listed on the privilege log did not involve Ms. Schauffler or MLLF. In other instances, the relationships of the parties to the communication was not disclosed. Nor did the privilege log sufficiently describe the communication to enable the Court to determine the application of the privilege. Courts in this district have held that a party who submits an inadequate privilege log waives the privilege.[36] After the Trustee's second motion to compel, CIT pared down the privilege log to 23 documents. The Court refers readers to its ruling on the privilege log and its *in camera* review of the documents claimed privileged.[37]

#### 5. *Failure to Comply with the First Order Compelling Discovery*

CIT compounded its original discovery failures by failing to follow the Court's Order on the Trustee's first motion to compel. Initially, CIT objected to producing billings of its attorneys on the grounds of attorney client privilege and work product doctrine.[38] At the hearing on the Trustee's first motion to compel, the Court ordered counsel to produce the billings, holding that they were not protected from disclosure. The Court ordered their production by April 12. That never occurred and led in part to the Trustee's second

motion to compel. No real justification for their nonproduction was provided by counsel.

Moreover, the content of CIT's refined privilege log provided to the Court May 21 is also troubling. It leads this Court to believe that CIT continues to defy the Court and to resist production of documents related to billings on this matter. In that privilege log, CIT continued to assert that communications regarding counsel's billings were privileged. The Court again ordered otherwise after its *in camera* review.[39]

#### Sanctions

Discovery should not be a sporting contest or a test of wills, particularly in a bankruptcy case where the parties' resources are limited and the dollar value of the stakes is often low. When a party and its counsel are as intransigent and uncooperative in discovery as CIT and MLLF have been in this matter, the Court has no choice but to impose sanctions that, hopefully, emphasize that the conduct sanctioned is both unprofessional and unacceptable. The Trustee has leveled serious and seriously credible allegations that CIT essentially ignored not only the express terms of this Court's Agreed Order granting stay relief, but also the stay by arrogating to itself property of the estate. These allegations cut to the very core of the bankruptcy process. CIT's and MLLF's conduct in the discovery phase of this matter have significantly multiplied its burdens, both on the Trustee and the Court. To date, the Court has decided motions to suspend discovery, to bifurcate the proceeding, for summary judgment, for dismissal, and determining what docu-

---

36. *In re Universal Serv. Fund. Tel. Billing Practices Litig.*, 232 F.R.D. 669 (D.Kan.2005).

37. Dkt. 120.

38. Dkt. 48, Ex. B, Request No. 4.b.

39. Dkt. 120.

ments are privileged. After all that, the merits of the Trustee's Turnover Motion have yet to be considered. Much of that effort, and the legal work that produced, would have been unnecessary but for CIT's and MLLF's cavalier attitude toward their discovery duties. CIT and MLLF seem more interested in "waiting out" the Trustee rather than having this case decided on the merits.

Considering the entirety of the record with respect to discovery in this matter, including the hearings held March 8, May 10 and May 23, CIT and its counsel have come forward with no acceptable justification for their discovery conduct or their apparent inability or unwillingness to comply with the rules of discovery. Because the Court finds that CIT's and its counsel's conduct regarding this discovery was not substantially justified, it concludes that sanctions are warranted and required by Rule 37(a)(4)(A) and (b)(2) and Rule 26(g)(3).

Ms. Schauffler has indicated that CIT (through FMC) directed the initial discovery responses made in this case. Therefore, the Court finds that MLLF and CIT should jointly share liability for sanctions. The Court has reviewed the Trustee's statement submitted in this matter and finds that it complies with this Court's Fee Guidelines. The Court also concludes that the requested attorney fees satisfy the factors in 11 U.S.C. § 330(a)(3). The hourly rates of the Trustee and her counsel are reasonable and well within the range of hourly rates for this locale, for bankruptcy and non-bankruptcy cases alike. The time expended by the Trustee and her counsel was reasonable and necessary under the circumstances.

Attorney fees in the amount of $10,934.50 are assessed against The CIT Group and MLLF, jointly and severally.[40] The Court declines to enter default judgment against CIT on the Trustee's Turnover Motion, but notes that further discovery misconduct by CIT and/or MLLF may lead to that end.

IT IS SO ORDERED.

---

**40.** The Court finds that the one-half hour (.5) of time spent by Ms. Tibbets on May 23, 2007 reviewing the Court's order denying CIT's motion to dismiss is unrelated to the discover matters at issue here and is disallowed as a sanction. With this one adjustment, the Trustee's attorney fees are reduced from $11,027 to $10,934.50.